## INTERSTATE TRUST CO. v. HEADLUND.

No. 3100. Decided January 30, 1918. On Petition for rehearing March 22, 1918. (171 Pac. 515.)

1. BILLS AND NOTES—"HOLDER IN DUE COURSE"—PLEDGEE. Under Comp. Laws 1907, Sections 1604, 1611, defining holders in due course, a pledgee accepting an unmatured note as collateral security *held* a holder in due course. (Page 546.)

2. BILLS AND NOTES—FRAUD—SUFFICIENCY OF EVIDENCE. Evidence that plaintiff personally investigated a corporation's affairs before purchasing its stock by giving the note sued upon, his letter stating that his failure to pay the note was due to lack of funds, etc., *held* not to establish that the note was secured by fraud. (Page 547.)

On Petition for Rehearing.

3. PLEDGES—COLLATERAL SECURITY—RENEWING DATE. Renewing a negotiable bill or note for the payment of which collateral securities have been pledged does not affect the creditor's right to retain or enforce such security. (Page 549.)

4. BILLS AND NOTES—RENEWAL—EFFECT. Renewing a note by another note does not extinguish the original debt unless such clearly appears to be the intention of the parties. (Page 550.)

5. PLEDGES—COLLATERAL SECURITY—RENEWING NOTE. Where defendant's note was pledged as collateral security for the pledgor's present and future debts, the fact that the pledgor gave a renewal note for his indebtedness did not prevent the plaintiff pledgee from realizing upon the collateral security. (Page 551.)

Appeal from District Court of Salt Lake County, Third District; *Hon. T. D. Lewis,* Judge.

Action by Interstate Trust Company, a corporation, against J. A. Headlund.

Judgment for plaintiff.    Defendant appeals.

AFFIRMED and petition for rehearing denied.

*H. V. Van Pelt* for appellant.

*Booth, Lee, Badger & Rich* for respondent.

McCARTY, J.

Plaintiff brought this action to recover upon a collateral note executed by defendant, payable to himself, and indorsed by him in blank, being negotiable in form.    From a judgment rendered in favor of plaintiff, defendant appeals.

The facts of this case are as follows: On or about December 19, 1911, one George P. Mason, who was the general manager and sales agent of the International Engineering Corporation, with its principal place of business in Denver, Colo., sold to J. A. Headlund, defendant, one hundred shares of the preferred and one hundred shares of the common stock of the said corporation for $1,000.    Headlund gave his two promissory notes, of $500 each, in payment of the stock.    He returned the certificates of the stock, indorsed in blank, to Mason as collateral security for the payment of the two notes given in payment of the stock.    Mason represented to Headlund that the corporation, which was engaged in building and installing furnaces, was "on a sound financial basis."    He also explained to Headlund somewhat in detail the amount and character of its assets.    Mason testified in part as follows:

"I told him that the company had many contracts for the sale and installation of furnaces, which contracts were worth many thousands of dollars in profits to them."

He further testified and his evidence is not disputed:

"I told him the profits that were in it and the prospective business that could be done, in my opinion, and gave him the privilege of coming on to Denver and making a thorough investigation. * * * In response to my suggestion, Mr. Headlund came to Denver in January, about a month after I

sold him the stock, to look into the proposition. I paid his expenses. He called on the president, the secretary, and the treasurer, saw the books and the contracts we had on hand. He made an investigation of the books of our company, and spent a day going over the matters of the company very carefully, and then investigated the furnaces in operation—two or three of them. He was so well pleased that he subscribed for fifteen hundred dollars more of the stock while he was in Denver."

The record shows that it was agreed that if it should be inconvenient for Headlund to pay for the stock last subscribed by him, his subscription would be canceled. This last subscription was later on canceled. This transaction is not in any sense an issue in the case. Our reason for referring to it is that we think it has a bearing on the question of fraud raised by defendant and referred to later on in this opinion.

On December 1, 1912, Headlund made and delivered to Mason a new note covering the indebtedness ($1,000) represented by the two notes mentioned, which note is in words and figures as follows:

$1,000.00.                    Denver, Colorado, Dec. 1, 1912.

"Ninety days after date I promise to pay to the order of myself at ————, one thousand dollars in gold coin of the United States, with interest at the rate of 6 per cent. per annum from date, for value received.     J. A. Headlund."

Headlund indorsed the note in blank as follows: "J. A. Headlund." This note and the two certificates of stock issued to Headlund, and delivered by him to Mason, were pledged by Mason, in writing, to plaintiff, the Interstate Trust Company, a Colorado Corporation, as collateral security for a loan of $500, on December 9, 1912, "and also all other present and future demands of any nature or kind of the holder hereof against the undersigned now owing, or which may hereafter be owing, and whether now or hereafter contracted." Before the maturity of the Headlund note plaintiff loaned Mason, as new loans, sums aggregating $750, and when the notes given by Mason to plaintiff matured new notes were executed by him and the old notes were marked "Paid by renewal." In

September, 1913, Mason's entire indebtedness was merged in and covered by one note of $3,500. When Mason executed the new note for that amount his old notes were, as stated, marked "Paid by renewal." The Headlund note of $1,000 and certificates of stock have been held by plaintiff ever since they were first pledged by Mason, and were attached to the note of $3,500 as collateral security for the payment of the same.

On December 24, 1915, plaintiff commenced this action against Headlund to recover judgment for the balance due and unpaid on his note. The complaint is in the form usually adopted and followed in the bringing of actions of this character. In his prayer plaintiff asks that the stocks pledged by Headlund as collateral security for the payment of the note "be sold according to law, and the proceeds of said sale applied to the account of costs and expenses, and the balance be applied on account of said indebtedness represented by said note, and the balance, if any, * * * go to defendant."

Defendant, in his answer, admits that he "signed and indorsed in blank the note described in the complaint, and that the same has not been paid except as stated in the complaint, and that no proceedings have been had at law for the recovery of said alleged debt." As an affirmative defense, defendant alleged that the note was obtained from him through false and fraudulent representations made to him by Mason respecting the market value of the capital stock of the International Engineering Corporation at the time the note was executed in payment of the 200 shares of the capital stock of the corporation as hereinbefore set forth. It is also alleged in the answer that "the said note was not indorsed or delivered to the plaintiff before maturity thereof," and that if the note were "indorsed to plaintiff in consideration of a loan, that said loan has been paid."

There is not a scintilla of evidence in the record tending to support the two allegations of the answer last mentioned, but, on the contrary the evidence affirmatively shows that the note was indorsed, and, together with the collateral pledged to secure the payment thereof, was delivered by Mason to plaintiff before the note matured. And the evidence,

without conflict, shows that the loan obtained by Mason, on the note and the other collateral mentioned, had not been paid at the time the cause was tried.

Section 1604, Comp. Laws, Utah 1907, so far as material here, provides that—

"A holder in due course is a holder who has taken the instrument under the following conditions: * * *

"(2) That he became the holder of it before it was overdue; * * *

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the party negotiating it."

Section 1611: "Every holder is deemed prima facie to be a holder in due course," etc.

These provisions of the statute and the undisputed evidence in this case entitles plaintiff to recover in this action; but, since fraud is pleaded and relied on by defendant as a defense, we shall briefly consider that issue.

As we have pointed out, the evidence shows that defendant, at Mason's suggestion, went to Denver, immediately after he purchased the stock in question, and made a thorough personal investigation of the business affairs of the International Engineering Corporation. He had access to and examined the books of the corporation and the contracts it had entered into for the building and installation of furnaces. He also examined the furnaces the company was engaged in manufacturing and offering to the public, and was so well pleased with the result of the investigation that he subscribed for an additional block of the stock of the corporation, valued at $1,500. Mason, as proof of his good faith in the enterprise, paid the expenses of the defendant's trip to Denver. It appears that from the time defendant returned home from Denver until the bringing of this action there was considerable correspondence carried on between Mason and the defendant in regard to the indebtedness represented by the note in question.

On September 17, 1913, nearly two years after Headlund

purchased the stock, giving the note in question in payment thereof, he wrote Mason in part as follows:

"I have your letter of the 12th inst., for which I thank you. I know I have not treated you fair and square, but my own circumstances have been such that I could not do otherwise. I shall send you on the 25th of this month check for $100. Let me know if that will do, and shall after that pay $100 now and then," etc.

He wrote other letters of the same import. In none of them did he claim, or even intimate, that he had at any time been dealt unfairly with by Mason. Not until this suit was commenced was the cry of fraud—"Stop thief!"—raised, and there is not a scintilla of evidence in the record that tends, in the remotest degree, to support the plea of fraud. In fact, there is but little, if any, merit in the appeal.

The judgment of the trial court is affirmed, with costs to respondent.

FRICK, C. J., and CORFMAN, THURMAN, and GIDEON, JJ., concur.

On Petition for Rehearing.

McCARTY, J.

Appellant has presented a petition for a rehearing. His counsel, in a brief filed in support of the petition, complains with much feeling and considerable earnestness that the principal ground upon which appellant relied for a reversal of the judgment is not discussed or referred to in the foregoing opinion. Counsel seems to contend, if we correctly understand his position, that the execution of the note for $3,500 by Mason, in lieu of the other notes mentioned in the opinion, theretofore executed by him to the plaintiff, extinguished—paid—the indebtedness represented by the old notes, and that a new contractual relation was thereby created between Mason and the plaintiff, and that the note in question "was released from all lien," and that plaintiff is not "the real party in interest."

The principles of law applicable to the undisputed facts relating to this point are so well established and universally recognized and adhered to by the courts we deemed it unnecessary to discuss the question. Since counsel vigorously insist that this defense is not without merit and is deserving of careful attention by this court, we shall briefly consider it.

We again invite attention to the note executed by Mason to plaintiff, to secure the payment of which he pledged to and deposited with plaintiff, as collateral, the note in question. The Mason note contains a provision which, so far as material here, is as follows:

"There is hereby and herewith pledged and deposited by and for the undersigned, as collateral security for the payment of this note, *and also all other present or future demands of any nature or kind of the holder hereof against the undersigned now owing or which may hereafter be owing, and whether now or hereafter contracted,* the following property, viz.: Note J. A. Headlund of $1,000.00 with stock attached."

It will be noticed that the part of the written pledge which we have italicized expressly provides that the note in question is given as collateral security for the payment of all other "present or future demands," etc., and, as stated in the foregoing opinion, it was transferred and pledged by Mason to plaintiff before maturity. Plaintiff was therefore, as stated, "a holder in due course." It is a well-established, and we might add elementary, rule of law that—

"The renewal of a negotiable bill or note representing the principal indebtedness, for the payment of which collateral securities have been deposited does not affect the right of the creditor to retain or enforce the collaterals. He is equally entitled to the benefit of the collateral securities as a means of obtaining payment of the note or bill given in renewal as in the case of the original evidence of indebtedness." Colebrooke on Collateral Securities (2d Ed.) Section 14.

Many cases, both state and federal, supporting this rule are cited in a note to the foregoing text.

In Jones on Collateral Securities (3d Ed.) section 541, the author says:

"A renewal of a note secured by a pledge merely extending the time of payment does not extinguish the debt, and is not a payment of it

which will discharge the creditor's claim upon the collateral securities'' (citing many cases).

Nor does the giving of a new note in renewal of another note extinguish the debt for which the original note was given unless it clearly appears that it was the intention of the parties that the execution of the new note and the cancellation of the old note should extinguish the debt represented by the old note

In 7 Cyc. 877, the rule is stated as follows:

"*Renewal Does Not Extinguish or Change Debt.*—Where a note is given merely in renewal of another note, and not in payment, the renewal does not extinguish the original debt, or in any way change the debt, except by postponing the time of payment, and as a general rule, therefore, the holder of a renewal note is entitled to the same remedies as if he were proceeding upon the original note. But if a new note is taken in payment, the original debt is extinguished and a new debt created. Whether a note is paid by the taking of a new note or merely renewed depends upon the intention.''

In 8 C. J. section 793, it is said:

"In so far as the taking of a renewal or new bill or note for an existing bill or note is concerned, it is generally held that the new bill or note is not a payment of the original instrument, in the absence of an understanding or agreement to that effect.''

The Supreme Court of California has repeatedly held that the execution of a note for a debt does not discharge the debt unless the parties expressly agree that the giving of the note shall be deemed payment. *Comptoir de Paris* v. *Dresbach et al.*, 78 Cal. 15, 20 Pac. 28; *Dellapiazza* v. *Foley*, 112 Cal. 380, 44 Pac. 727; *Grangers Bank of Cal. et al.* v. *Shuey et al.*, 55 Pac. 682; *Bridge* v. *Connecticut Mut. Life Ins. Co.*, 167 Cal. 774, 141 Pac. 375; *Welch* v. *Allington*, 23 Cal. 322.

In the case last cited the court says:

"The law will not presume such an agreement and it must be proved by the party relying upon it.''

In the case of *Fidelity State Bank* v. *Miller*, 29 Idaho, 777, 162 Pac. 244, cited and relied on by appellant in support of his contention on this point, it was expressly agreed that the new note should be an absolute payment of the indebtedness

represented by the old note.   In the course of the opinion it is said:

"The evidence shows that the plaintiff's officers refused to accept any renewal notes, and that old notes were marked paid, canceled, and returned to the defendant; that the officers of said bank, under instructions of the bank examiner, stated to the defendant that they must have a new loan to be secured as an original transaction, and that the bank would not make any extension of old notes. * * * The defendant was told at the time of making the new note that it was understood that it was a new loan and that he could have money to pay the old note. * * * The bank made no renewals whatever."

In this case there was no express agreement that the execution of the note for $3,500 by Mason should be deemed payment of the indebtedness represented by the old notes, nor is there any evidence from which such intention can be inferred. The question, however, of whether the giving of a new note in renewal of another note is payment of the debt represented by the old note is not of controlling importance in this case, as counsel for appellant seems to contend. The contract under which the note in question was held by plaintiff as collateral security provided that the note was "pledged and deposited * * * as collateral security for the payment of * * * all present and future demands * * * now or hereafter contracted," etc. Counsel for appellant also cites *Woodsum* v. *Cole*, 69 Cal. 142, 10 Pac. 331; *Chase* v. *Whitmore*, 68 Cal. 545, 9 Pac. 942. In each of these cases the note was transferred after maturity and the rights of the transferees were acquired after maturity. Moreover, in the case last referred to fraud of the rankest character was an important element in the case. In the case at bar appellant abandoned the defense based on fraud. His counsel in the brief filed in support of the petition claims that he is put in a false or untrue light because of the reference made in the foregoing opinion to that issue. Were it not that the element of fraud in *Chase* v. *Whitmore* is one of the features of that case that distinguishes it from the case at bar, we would be impelled to modify the opinion by eliminating therefrom the reference made to that issue, as appellant in his petition for a rehearing expressly abandons it.   By elimi-

nating or abandoning the allegations of fraud in the answer, the defense on the merits, in the face of the undisputed facts, is frivolous and entirely without merit.

For the reasons stated, the petition for a rehearing is denied.

FRICK, C. J. and CORFMAN, THURMAN, and GIDEON, JJ., concur.