**POTTER v. UNITED STATES et al.**
Civ. A. No. 1313.

United States District Court
D. Rhode Island.
March 31, 1953.

Morris S. Waldman, Wm. C. H. Brand, Providence, R. I., for plaintiff.

Thomas J. Capalbo, Asst. U. S. Atty. for District of Rhode Island, Westerly, R. I., for defendants.

LEAHY, District Judge.

This is an action brought by Charles W. Potter, of East Providence, Rhode Island, against the United States of America, by which the plaintiff, a mortgagee, is attempting to establish the priority of a mortgage held by him from Harry Crawshaw's Grill, Inc., over certain federal tax liens filed by the defendant for taxes due from said Harry Crawshaw's Grill, Inc. The complaint prays for a declaratory judgment, pursuant to the provisions of 28 U.S.C.A. § 2201, determining the rights of the parties and their respective priorities to the property of said corporation.

In its answer the defendant asks that it be granted judgment establishing the priority of its lien as against the claim of the plaintiff; that its lien be foreclosed pursuant to the provisions of § 3678 of the Internal Revenue Code and § 2410(c) of Title 28 U.S.C.A.; and that the amount due the defendant for said taxes be ordered paid.

The matter was submitted to the Court for decision on an agreed statement of facts and on oral arguments. The essential facts are substantially as follows: On June 29, 1949, Harry Crawshaw's Grill, Inc., a Rhode Island corporation, executed and delivered a promissory note to Margaret Crawshaw in the sum of $11,000, bearing interest at the rate of 5 per cent per annum on the unpaid balance. The note was payable in monthly installments of $329.68, the first payment being due on July 9, 1949. This promissory note was also signed by Harry L. Wilcox, who was the president and treasurer of the corporation. To secure payment of this note, the corporation executed a mortgage on certain personal property, consisting of restaurant equipment, located at 22 Waterman Avenue, East Providence, Rhode Island. This mortgage was duly recorded in the Town Clerk's Office in said Town of East Providence. Assessment lists were received by the Collector of Internal Revenue, at Providence, Rhode Island, on May 22, 1950, December 4, 1950, and March 7, 1951, disclosing that the above corporation, Harry Crawshaw's Grill, Inc., owed to the defendant the amount of $2,201.17 in withholding and F.I.C.A. taxes. Following the receipt of each assessment list, the Collector of Internal Revenue notified the taxpayer, Harry Crawshaw's Grill, Inc., of the tax due, and requested payment thereof.

On April 12, 1951, the defendant, under its Internal Revenue Laws, filed with the Town Clerk of the Town of East Providence, an original notice of a tax lien dated April 11, 1951, against said Harry Crawshaw's Grill, Inc.

The corporation defaulted in the payment of its mortgage note to Margaret Crawshaw, and the latter, through her attorneys, commenced foreclosure proceedings against

the personal property which had served as security for the mortgage.

Thereupon Harry L. Wilcox and Doris L. Wilcox approached the plaintiff, to whom they were already personally indebted in the sum of $1,000, and requested and importuned him to advance to the corporation sufficient funds to pay off the balance due to Margaret Crawshaw on said promissory note. At that time the balance on the note, including costs and counsel fees, amounted to $3,867.

The plaintiff, being completely ignorant of the existence of the tax lien filed by the defendant, advanced to the corporation the above sum of $3,867, which was then used to pay the balance of the note of June 29, 1949. As a result of this payment, the foreclosure proceedings against the corporation's personal property were stopped, and the said mortgage was discharged.

The corporation then delivered to the plaintiff a note, dated August 3, 1951, in the sum of $4,867. This sum included not only the $3,867 which had been advanced by the plaintiff to discharge the original mortgage, but included an additional sum of $1,000, which represented the unsecured debt owed by Harry L. Wilcox and Doris L. Wilcox to the plaintiff. This new note for $4,867 was payable to the plaintiff on demand, with interest at the rate of 8 per cent, and was signed by the corporation and by Harry L. Wilcox and Doris L. Wilcox. As security for this new note the corporation executed a mortgage to the plaintiff on the same personal property which had previously served as security for the earlier note. This personal property mortgage was duly recorded on August 6, 1951, with the Town Clerk of the Town of East Providence.

At the time the plaintiff received the above note and mortgage, he had no personal knowledge concerning the lien filed on April 12, 1951, by the defendant, and the mortgage on the said personal property contained a warranty that it was free and clear of all encumbrances.

No payments on the corporation's note of August 3, 1951, either of principal or interest, were ever made to the plaintiff, and in the early part of October 1951, the attorneys for the plaintiff made a written demand on the debtors for payment of the note. This demand was not complied with, and on November 20, 1951, the plaintiff, through his attorneys, commenced foreclosure proceedings against the mortgaged personal property.

It was also on November 20, 1951, that the defendant, under a duly issued warrant for distraint, based upon the lien it had filed on April 12, 1951, seized said personal property in East Providence, for non-payment of the taxes above referred to, the balance of said taxes at that time being $1,857.42.

On December 5, 1951 the plaintiff commenced his action in this Court, and by a stipulation entered into by the parties, the defendant was authorized to sell the mortgaged personal property under its seizure and distraint, and to deposit the net receipts of the sale in the registry of the Court to await the final judgment and determination by the Court of the respective rights of the parties in this matter. In accordance with the terms of this stipulation the personal property above referred to was sold on December 17, 1951, and the sum of $3,400 which was realized from the sale was deposited in the registry of the Court.

To establish the priority of his claim over that of the defendant, the plaintiff relies on the theory of conventional subrogation. Priority is claimed, however, only to the extent of $3,867, that being the amount advanced by the plaintiff to discharge the previous mortgage on the corporation's personal property. This was the same property upon which the defendant had filed its lien, unknown to the plaintiff. The plaintiff contends that the defendant is in no worse position now than it was before the discharge of the old mortgage, and that the plaintiff, having advanced the funds to discharge that mortgage, and having become the new mortgagee of the property, is subrogated to the rights of the previous mortgagee.

The contention of the defendant is that under the provisions of §§ 3670, 3671, and 3672 of the Internal Revenue Code its claim has priority to that of the plaintiff, be-

cause its lien was placed on the mortgaged property before the plaintiff's mortgage was executed.

■ A person under no obligation who undertakes by agreement with an obligor to pay the latter's debt, with the understanding that he will have the same or equivalent security to that held by the original creditor, and subsequently pays that obligation, will be subrogated to the rights of the original creditor, provided that the entire transaction places no innocent third party in a position more unfavorable than that in which he originally stood. Industrial Trust Company v. Hanley, 1933, 53 R.I. 180, 165 A. 223; Burgoon v. Lavezzo, 1937, 68 App. D.C. 20, 92 F.2d 726, 113 A.L.R. 944; Stowers v. Wheat, 5 Cir., 1935, 78 F.2d 25; Barnes v. Cady, 6 Cir., 1916, 232 F. 318; Rachal v. Smith, 5 Cir., 1900, 101 F. 159; Edwards v. Davenport, C.C., 1883, 20 F. 756.

■■ Constructive notice of the junior lien is insufficient to defeat his right of subrogation, and his failure to find the junior encumbrance on the record will not be sufficient reason to deny him relief in equity. Burgoon v. Lavezzo, supra; Industrial Trust Company v. Hanley, supra. Mistake is considered a proper ground for relief in equity. Industrial Trust Company v. Hanley, supra; Conti v. Fisher, 1926, 48 R.I. 33, 134 A. 849.

■ The allowance of subrogation does not restrict the effect of the record of the junior lien, but merely replaces it in its original position, junior to the lien with respect to which subrogation is allowed. Thus when a person who advances funds to discharge a mortgage lien on property with respect to which he receives a new mortgage, fails, merely through ignorance of a junior lien thereon, to take an actual assignment of the mortgage, thereby completely securing his position, equity will regard the substance rather than the form of the transaction, and will treat the new mortgagee as equitable assignee of the original mortgagee's rights, in the absence of intervening equities. Burgoon v. Lavezzo, supra; Industrial Trust Company v. Hanley, supra.

■ The Government contends that, because of considerations applicable to the unusual facts of the instant case, these principles of subrogation law ought not to be applied here. One reason urged for their inapplicability is that no agreement existed between the plaintiff and the mortgagor providing that the plaintiff was to stand first among all lienholders. It appears, however, that the mortgage held by the plaintiff, relative to the property in question, contained a warranty that it was free and clear of all encumbrances. Clearly this is sufficient to remove the plaintiff from the category of volunteer; and not being a volunteer he is entitled to subrogation, unless other sufficient reasons exist to deprive him of this right. Burgoon v. Lavezzo, supra; Rachal v. Smith, supra.

■ Another reason advanced by the Government for disallowing subrogation in this case is that the property involved here is personal property rather than real estate. But no case has been cited in support of making such a distinction, and the Court is not aware of any reason sufficient to warrant a distinction being made on this ground. In applying the doctrine of subrogation, "no attention should be paid to technicalities which are not of an insuperable character, but the broad equities should always be sought out as far as possible." Merchants' & Miners' Transp. Co. v. Robinson-Baxter, Etc., Co., 1 Cir., 1911, 191 F. 769, 772. If justice will be served by allowing subrogation, conceptual and formalistic arguments will not bar the granting of relief.

■ Perhaps the strongest argument urged by the Government for distinguishing the case at bar from others in which subrogation has been allowed, is that the note for the loan advanced by the plaintiff to the mortgagor here was for a different amount and carried a different rate of interest than did the original mortgage. The Government contends that because of this difference, the amount of the new note cannot be divided so as to allow subrogation for a part thereof and not for another part. Therefore, the Government contends, the full amount of the plaintiff's claim must be

adjudged to be subsequent to the Government's lien.

The contention of the Government in this regard places undue emphasis on form, and not enough on substance. Viewing the matter more in terms of substance, it can be seen that if the plaintiff had full knowledge of the Government's lien here, he could have made certain that he would have been protected, by taking an assignment of the old mortgage, and by taking a new mortgage to cover only the $1,000 already owed him. The rate of interest on this new mortgage could have been adjusted so as to provide plaintiff with a combined rate of return equal to that which prevails on the present note.

Inasmuch as it was at the mortgagor's request that the plaintiff here advanced the money to discharge the old mortgage, that mortgage would unquestionably have been assigned to the plaintiff, instead of being discharged and a new mortgage issued, if plaintiff had requested such assignment. The reason plaintiff failed to obtain an assignment, thus completely securing his position, was his ignorance of the Government's junior lien. Equity will regard the substance of the transaction, however, rather than its form, and in the absence of intervening considerations, will rectify the mistake, by treating the plaintiff as an equitable assignee of the original mortgage. Burgoon v. Lavezzo, supra; Industrial Trust Company v. Hanley, supra.

Why the amount of the new note, as it stands now, cannot be so divided as to allow subrogation for that portion which represents the amount of the old mortgage, has not been satisfactorily explained by the defendant. The Court would have little difficulty in dividing the amount of plaintiff's claim so as to allow him priority for only the amount of the old mortgage and at the rate of interest specified therein, if such division were required. Because the fund realized from the sale of the mortgaged property is inadequate to pay even the amount of the old mortgage, however, no such division is required here.

The allowance of subrogation under these circumstances places the Government in no worse position than it was in before the discharge of the old mortgage, and it is not entitled to be unjustly enriched by the plaintiff's mistake. Industrial Trust Company v. Hanley, supra.

Upon consideration of all the circumstances of the case, the Court finds that the claim of the plaintiff is entitled to priority over that of the defendant.

Counsel for the plaintiff may prepare for the signature of the Court an appropriate form of final judgment in accordance with this opinion.