**FIRST SECURITY BANK OF UTAH et al., Plaintiffs and Respondents,**

v.

**PROUDFIT SPORTING GOODS CO., a corporation, et al., Defendants and Appellant.**

**No. 14301.**

Supreme Court of Utah.

July 9, 1976.

George B. Handy and Parley R. Baldwin, Ogden, for defendants-appellants.

Paul Thatcher, Ogden, Don Allen of Ray, Quinney & Nebeker, Salt Lake City, for plaintiffs-respondents.

HENRIOD, Chief Justice:

Appeal from a foreclosure judgment declared to have priority over a mortgage asserted by Remington against Proudfit, First Security's mortgagee in point of time. Affirmed, with no costs awarded.

In 1967, Proudfit borrowed $45,000 from First Security, executing a mortgage securing a note for that amount. In November, 1970, the note had not been paid in full. At the request of Proudfit a trust deed was executed for the unpaid balance, plus an additional advance for a total of $63,000 indebtedness, securing a renewal note. This trust deed was given, as recited therein, to secure the "payment of the indebtedness evidenced by a promissory note

---

**124**

of even date herewith . . . and any extensions and/or renewals or modifications thereof." The trust deed was recorded in May, 1971. Remington has a judgment lien against Proudfit, recorded seven months later in December, 1971. In June, 1972, Proudfit requested and obtained an extension or renewal of the note, secured by the mortgage of First Security, still unreleased on record. Remington, without asserting any claim as to right of redemption, or relative equitable interests in the property, by recordation or otherwise,—simply says that

On June 19, 1972, when Proudfit executed a note for $68,180, that the 1970 trust deed note for a lesser amount was paid and a new separate and distinct contract came into being.

There is little merit to this argument, under the facts of this case, since Remington volunteers and urges that there was a stoppage of the terms of a recorded, written contract, that provided,—which the law of contracts provides can be done,—that, for a consideration, people may protect, or not protect their property, or encumber or not encumber it as long as the recording acts reflect such improvisations that are not vulnerable to attack by equity dehors the written document. Here, there is no release of mortgage of record by the parties.

To determine otherwise would be to allow the interloper claimant to urge superiority—by judgment lien or otherwise, over an option, for example, to renew a lease, where the parties willingly agreed to modify its terms, or a first refusal's interdiction, or the pounding authority of the auctioneers' gavel,—or even the non-recognition of the honored title acquired perhaps at the historical thieves' markets or markets overt.

In cases like this, intent of the parties is important, as reflected in *Interstate Trust v. Headlund* [1] where we said:

Nor does the giving of a new note in renewal of another note extinguish the debt for which the original note was given unless it clearly appears that it was the intention of the parties that the execution of the new note and the cancellation of the old note should extinguish the debt represented by the old note.

The record here clearly reflects that there was no such intent.

ELLETT, CROCKETT, and TUCKETT, JJ., concur.

MAUGHAN, J., concurs in the result.

1. 51 Utah 543, 171 P. 515 (1918) ; *Gray v. Kappos,* 90 Utah 300, 61 P.2d 613 (1936).