**In re B & B PRINTING CO., INC., Debtor.**

**Larry E. STAATS, Trustee, Plaintiff,**

**v.**

**John J. GUZZO, et al., Defendants.**

**Bankruptcy No. 2–91–05227. Adv. No. 2–92–0134.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Dec. 14, 1993.

Brenda L. Dodrill, Asst. U.S. Atty., Columbus, OH, for U.S.

Donald L. Jones, Dublin, OH, for defendant John J. Guzzo.

Trish Lazich, Asst. Atty. Gen., State of Ohio, Bureau of Employment Serv., Columbus, OH, for Ohio Bureau of Employment Serv.

Larry E. Staats, Trustee, Columbus, OH.

Frederick Ransier, State of Ohio, Dept. of Taxation, Columbus, OH.

## OPINION AND ORDER ON COMPLAINT TO DETERMINE PRIORITY OF LIENS

BARBARA J. SELLERS, Bankruptcy Judge.

On April 9, 1992, Larry E. Staats, Trustee, filed a complaint seeking to determine the validity, extent and priority of liens against the assets of the bankruptcy estate of B & B Printing Co., Inc. All claims against the estate's assets have been dismissed, compromised, or reduced to default judgment except those of defendants John J. Guzzo ("Guzzo"); the United States of America, Internal Revenue Service ("United States"); and the Ohio Bureau of Employment Services ("OBES").

Pursuant to 28 U.S.C. §§ 1334(b), 157(b)(2), and the General Order of Reference entered in this district, this Court has jurisdiction to hear and finally determine this core proceeding.

The parties have stipulated to the relevant facts in this matter, including a stipulation recognizing the validity of each party's lien. The issues presented for determination are: (1) whether the filing date of the first United States' notice of tax lien acted as an attachment for all subsequent federal tax lien filings through relation back, and (2) whether, based on the 45–day rule and choate lien theory, the liens of the United States, once choate, attached prior to the liens of other parties with interests in after-acquired property.

### I. The "Relation Back" Theory

■ In its brief, the United States asserts that all notices of tax lien filings relate back to its first filings on September 16, 1985. (United States Brief, p. 5). In support of this proposition, the United States cites *United States v. Bank of Celina*, 721 F.2d 163 (6th Cir.1983).

In *Bank of Celina*, the bank attempted to set off a customer's debt even though the United States previously had filed notices of tax liens against the customer's assets. The Court of Appeals for the Sixth Circuit held

that the United States was entitled to the monies used to set off the customer's obligation to the bank. In so holding, the court stated that "once a federal tax lien has attached to a taxpayer's property, that property remains subject to the lien when transferred from the taxpayer to a third party." *Id.* at 169.

United States' reliance on *Bank of Celina* for support of its "relation back" theory is misplaced. Although the Sixth Circuit espouses such a theory, it was expressed "[b]efore proceeding to the merits" of the case, and was not used by the court in its legal analysis. *Bank of Celina* at 166. Thus, the support of the "relation back" theory used by the United States in the case at bar is mere dicta, and has no legal authority.

United States, citing *Peterson v. United States*, 511 F.Supp. 250 (D.Utah 1981), further states that the filing of the first tax lien notice puts interested parties on notice and imparts to the parties an obligation to inquire as to the accumulating tax obligation. (United States Brief, p. 5). Thus, United States argues, it is secured for the actual amount of tax liability as it accumulates, not just for the amount recorded.

The problem with the United States' analysis is two-fold. First, *Peterson* is a district court decision from Utah and, thus, is not controlling authority for the "relation back" theory. Second, *Peterson* is contrary to the applicable statutory authority.

26 U.S.C. § 6321 states:

"If any person *liable* to pay any tax neglects or refuses to pay the same after demand, the amount (including interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property, whether real or personal, belonging to such person." (Emphasis added).

The application of a "relation back" theory in which a subsequent tax lien "relates back" to the filing date of a prior tax lien disregards the fact that 26 U.S.C. § 6321 requires that a person be liable for the tax before the lien is created. If a lien "relates back" to a filing

date before the creation of that lien, it allows the United States a lien before the taxpayer is liable for the tax.

Moreover, 26 U.S.C. § 6322 states:

... [T]he lien imposed by section 6321 *shall arise at the time the assessment is made* and shall continue until the liability for the amount so assessed ... is satisfied or becomes unenforceable by reason of lapse of time. (Emphasis added).

This statutory language is in direct conflict with the theory relied upon by the United States. If a subsequent tax lien "relates back" to the filing date of a prior lien, it becomes effective for purposes of priority against holders of state created liens before the actual date of assessment. Such a result is clearly contrary to the express language of 26 U.S.C. § 6322.

Finally, 26 U.S.C. § 6323(a) states that a 26 U.S.C. § 6321 lien "shall not be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof ... has been filed ...". The purpose of this provision is to protect subsequent secured creditors from a "secret tax lien"—a lien in which the creditor would have no notice—imposed by the United States. The "relation back" theory thwarts such a purpose. Such a theory allows a secured creditor to be defeated by a lien of which he/she had no notice. Therefore, 26 U.S.C. § 6232(a) implicitly speaks against such a theory.

The "relation back" theory espoused by the United States is contrary to the statutory authority of 26 U.S.C. §§ 6321, 6322, and 6323(a). Moreover, the United States has presented no colorable authority to this Court to uphold such a theory. Thus, this Court holds that tax liens of the United States arising from assessments for discrete tax obligations made subsequent to the initial lien filing do not "relate back" to the prior tax lien filed by the United States.

## II. *The Choate Lien Theory*

■ A validly perfected tax lien requires a notice of federal tax lien to be filed. 26 U.S.C. § 6823. Thus, perfection of United States' lien did not commence prior to the filing of such notice.

■ For a state lien, the identity of the lienor, the property subject to the lien, and the amount of the lien must be established in order for such lien to be choate. *See, United States v. New Britain*, 347 U.S. 81 at 84, 74 S.Ct. 367 at 369, 98 L.Ed. 520 (1954) and *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). In determining the property subject to the state lien, the Supreme Court stated that the test is that the identity of the property subject to the lien must be established. *United States v. Vermont*, 377 U.S. 351 at 358, 84 S.Ct. 1267 at 1271, 12 L.Ed.2d 370 (1964). In *United States v. McDermott, et al.*, — U.S. ——, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993), the Supreme Court clarified that "attachment to particular property was also an element of what was meant by 'perfection' in *New Britain*."

■ Clearly, if Defendant Guzzo's state lien were perfected before the United States' tax lien was perfected, Guzzo's lien would have priority under the doctrine of "first in time, first in right." *Rankin & Schatzell v. Scott*, 25 U.S. (12 Wheat) 177 at 179, 6 L.Ed. 592 (1827). In these circumstances, Guzzo's state lien properly identified the lienor and the amount of such lien as required by *New Britain*. However, Guzzo's lien was not "perfected" within the meaning of *New Britain* because the property subject to the lien was not established as required in *Vermont*, and the debtor did not have rights in the property. Thus, the security interest had not attached to the property as required by *McDermott*.

That Guzzo's state lien was not "perfected" within the meaning of *New Britain* does not necessarily mean that the United States was "first in time." As with Guzzo, the United States' after-acquired portion of the tax lien did not attach to established property, and, therefore, was not "perfected" when notice was filed. However, the recently decided *McDermott* case speaks squarely to the issue of competing interests in after-acquired property where one party is the federal government and one party is a state lienor.

In *McDermott*, the Supreme Court stated that the filing of notice under 26 U.S.C.

§ 6323 "renders the federal tax lien extant for 'first in time' priority purposes regardless of whether it has yet attached to identifiable property." *McDermott,* —— U.S. at ——, 113 S.Ct. at 1530.

The Supreme Court further specified that because 26 U.S.C. § 6323 set out specific exceptions to the filing of notice provision (e.g. commercial transactions financing agreements), matters not falling within an exception presume that the federal tax lien prevails. *McDermott,* —— U.S. at ——, 113 S.Ct. at 1530. The Supreme Court stated that "the federal tax lien is ordinarily dated, for purposes of 'first in time' priority against § 6323(a) competing interests, from the time of its filing, regardless of when it attaches to the subject property." *McDermott,* —— U.S. at ——, 113 S.Ct. at 1530.

The policy rationale of not adhering to a strict "first in time" rule emanates from the nature of the competing liens. Although a strict presumption is ordinarily appropriate as between private parties, a different standard applies when one of the parties is the government, acting in a taxing capacity. The government is "unable to decline to hold the taxpayer liable for taxes," and "notice of a previously filed security agreement in after-acquired property does not enable the government to protect itself." *McDermott,* —— U.S. at ——, 113 S.Ct. at 1531. Thus, in this situation, "the federal tax lien must be given priority." *McDermott,* —— U.S. at ——, 113 S.Ct. at 1531.

■ Relying on Ohio Rev.Code § 1309.-01(A)(15), Guzzo argues that accounts receivable are not after-acquired property. Assuming, for purposes of argument, that accounts receivable are not after-acquired property under state law, the result is the same. The case before the Court involves competing liens of the federal government and a private party asserting rights under state law. Federal law, decided in *New Britain, Pioneer American,* and *McDermott,* is controlling. Future accounts receivable, whether or not called after-acquired property for Uniform Commercial Code purposes, are not property identified and established at the time the lien is recorded.

### III. *Conclusion*

Based on the foregoing, the Court finds that the priority of liens shall be the following:

(1) $5,200 to Defendant Guzzo for a purchase money security interest in one Miller color printing press;

(2) Up to $1,710.75 to Defendant OBES for personal property in existence on 8/7/85;

(3) $19,386.80 to Defendant United States for all property in existence and/or after-acquired;

(4) Up to $13,069.23 to Defendant OBES for personal property in existence on 10/2/85, 1/6/86, 4/3/86, 7/2/86, 9/29/86, 1/2/87, 9/28/87, and 1/7/88;

(5) Up to $78,679.18 to Defendant Guzzo for all property in existence from 2/10/88 to 2/28/88;

(6) Up to $53,564.11 to Defendant United States for all property remaining.

To the extent the OBES and Guzzo lien amounts require proof of property in existence at certain times and such property cannot be shown, United States has priority.

A judgment will be issued consistent with this finding.

IT IS SO ORDERED.