## GRAY v. KAPPOS et al.

No. 5686.   Decided October 22, 1936.   (61 P. [2d] 613.)

Rehearing Denied, January 4, 1937.

*L. I. Layton,* of Salt Lake City, for appellant.

*Bowen & Quinney,* of Salt Lake City, for respondents.

EPHRAIM HANSON, Justice.

This action had a threefold purpose; (1) Plaintiff sought to recover from the defendants John and Saron Kappos, hereinafter called the Kapposes, $933 alleged to be due plaintiff from those defendants as rental for a ranch near Bingham Canyon, Utah; (2) to have the claim of the lessor, plaintiff herein, declared a lien on certain sheep prior to the mortgages held by the First Security Bank of Bingham Canyon; and (3) to have the claim of the lessor adjudged prior to the rights of the defendant Chris Fergis, the pur-

chaser of the sheep in question. The bank claimed that the mortgages it held were purchase-money mortgages, and, therefore, ahead of the lien of plaintiff.

The parties stipulated certain facts. The evidence as to the facts not stipulated is practically undisputed. The trial court found that in October, 1928, the bank loaned to the Kapposes $2,000 to purchase 300 sheep for which the Kapposes gave the bank their promissory note payable in six months, secured by a mortgage on the sheep. The note and mortgage were not paid when due, and were renewed in April, 1929. On August 26, 1929, the bank loaned the Kapposes money to buy additional sheep. The amount of that loan was added to the amount still due on the loan of $2,000. All sheep were included in a new mortgage to secure a note for $3,168, that being the amount due on the original loan, plus the amount loaned for the second purchase of sheep. In January, 1931, the loan amounted to $3,350, for which the Kapposes executed a note secured by a mortgage on the remaining sheep. On July 28, 1932, the bank loaned the Kapposes additional money with which to buy more sheep. The amount loaned was added to the amount due on the other purchases, and notes, one for $4,500 and one for $500, secured by mortgages on all the sheep, were fully executed in the bank's favor. In November, 1932, the sheep were sold to Fergis and the amount received credited on the amount that the Kapposes owed the bank.

During the summer months the sheep were grazed upon the ranch which the plaintiff had leased to the Kapposes on January 1, 1929, and which lease was in force and effect at the time the sheep were sold. The sheep were on the ranch when they were sold to Fergis. In December, and before thirty days had expired from the time of the sale to Fergis, the plaintiff brought this action to impress the sheep with a lien under section 3776, Comp. Laws Utah 1917 (now 52-3-1, R. S. Utah 1933), which section provides:

"Except as hereinafter provided, lessors shall have a lien for rent due upon all nonexempt property of the lessee brought or kept upon

the leased premises so long as the lessee shall occupy said premises and for thirty days thereafter."

The bank by counterclaim and cross-complaint sought to foreclose its mortgage on the sheep.

The trial court decreed that the mortgage be foreclosed, that the amount secured thereon be applied first to the costs of sale, second to the amount due the bank of $3,061.12, and third, out of the remainder, if any, plaintiff should be paid the $933 due him for rent under the lease. From this decree plaintiff appeals. He here asserts: (1) That the mortgage which was foreclosed was not a purchase-money mortgage and that the renewals of the different mortgages were not in fact renewals; (2) that if the mortgages were renewals the lien of plaintiff is prior thereto, because the sheep were brought upon the leased premises before the mortgages were filed of record.

Section 3777, Comp. Laws Utah 1917 (now 52-3-2. R. S. 1933) provides:

"The lien provided for in this chapter shall be preferred to all other liens or claims except claims for taxes and liens of mechanics under chapter 1 of this title, mortgages for purchase money, and claims of employees for wages which are preferred by law."

Under this statute, if the mortgage foreclosed by the bank was for the purchase money for the sheep in question, then it has priority over the lien claimed by plaintiff. A purchase-money mortgage is a mortgage which is given upon the property sold to secure the balance of the purchase price remaining unpaid. It is a debt created by the purchase. Whether the mortgage is given directly to the vendor or to a third person who advances the money, the legal effect is the same. *Featherstone* v. *Emerson,* 14 Utah 12, 45 P. 713; *Ely Sav. Bank* v. *Graham,* 201 Iowa 840, 208 N. W. 312; *Ladd & Tilton Bank* v. *Mitchell,* 93 Or. 668, 184 P. 282, 6 A. L. R. 1420; 41 C. J. 458.

The bank advanced the money to the purchaser for the purpose of purchasing the sheep. Simultaneously, as a part

of the same transaction, the purchaser mortgaged the sheep so purchased to the bank for the money advanced. Originally, the mortgages were purchase-money mortgages. Neither renewing nor combining them changed their essential characteristics. They still remained purchase-money mortgages. In each case when a new note was given the prior note was retained by the bank; each subsequent note was marked or stamped as a renewal of the first note. The prior mortgage was not satisfied of record. Apparently the parties intended that the giving of a new note and mortgage was a renewal of a previous note and mortgage. Legal effect should be given to the intention of the parties in such case. Whether the taking of renewal notes is in payment of the obligation represented by the previous note is a question to be determined by ascertaining the intention of the parties as manifested by the facts and circumstances attending their transactions. *Interstate Trust Co.* v. *Headlund,* 51 Utah 543, 171 P. 515; *Anglo-California Trust Co.* v. *Wallace,* 58 Cal. App. 625, 209 P. 78; *Haley* v. *Austin,* 74 Colo. 571, 223 P. 43; 8 C. J. 371, and cases cited.

We now come to plaintiff's claim that his lien supersedes the bank's mortgage because the sheep were brought upon the leased premises before the mortgages were filed of record. Plaintiff does not claim his lien is prior to the mortgage on the sheep first purchased, since that purchase was made and the mortgage given and recorded prior to the lease in question. As to the sheep purchased on August 26, 1929, and those purchased on July 28, 1932, plaintiff insists his lien is prior. On the day that each of these transactions was had, a note and mortgage were duly executed and delivered to the bank. On September 6, 1929, and August 2, 1932, respectively, the mortgages were filed by the bank with the county recorder of Salt Lake county. We will assume that the sheep in each case were brought to the ranch before the mortgage was filed of record.

Plaintiff's lien is based entirely on the statute. His statu-

tory lien, however, is subordinate to a purchase-money mortgage. That mortgage, though unrecorded, is valid as between the mortgagor and mortgagee and those who have notice thereof. Under certain circumstances, the mortgagee may by his failure to record the mortgage be estopped from claiming benefits under it. No claim of fraud is here urged. No estoppel is asserted by the plaintiff against the bank. That the giving of the notes and mortgages securing them were bona fide transactions is not here questioned. The transactions being bona fide, and there being no fraud or estoppel claimed, the plaintiff's lien is subject to the purchase-money mortgage. Plaintiff by his lien acquired no rights in and to the sheep superior to the rights of the Kapposes. The lien of plaintiff attached as soon as the sheep were brought upon the leased premises, but it attached only to the right that the Kapposes had in and to the sheep. It was coextensive with that right, neither greater nor less. Since the rights of the Kapposes in and to the sheep were subject to the purchase-money mortgage, it must follow that the lien of plaintiff was likewise subject to that same mortgage. *Grover* v. *Cash,* 69 Utah 194, 253 P. 676; *Barrett* v. *Martzahn,* 186 Iowa 548, 173 N. W. 72; *Davis Gasoline Engine Works Co.* v. *McHugh,* 115 Iowa 415, 88 N. W. 948.

This holding disposes of plaintiff's claim that his lien is prior to the rights of the defendant Fergis. The foreclosure decree provided that after paying the costs of sale and the amount due the bank, the plaintiff should be paid the amount of his lien. Such decree was a proper one in the case. Under the decree, the purchaser acquired good title to the sheep, free from any lien of plaintiff. Apparently the amount realized was insufficient to pay the different claims. That fact, however, cannot alter the rights of the parties in the case.

The judgment appealed from is affirmed, respondents to recover their costs.

ELIAS HANSEN, C. J., and FOLLAND and MOFFAT, JJ., concur.

WOLFE, Justice.

I concur. It seems just that he who makes it possible for the lessee to acquire goods to bring on the leased land should not be subordinated to the lessor's lien. Had the money not been advanced, the probabilities are the property would never have reached the leased premises. It would seem to make no difference because the sheep reached the leased premises before the mortgage was recorded. Records are to save parties dealing with the property from being prejudiced by the interests of others. The lessor is not prejudiced because after his lease property subject to a purchase-money mortgage is brought on the premises. He has not acted, in leasing the property, on reliance that there is property on which he may have a prior lien for his rent money. Had he leased the premises with the sheep on them when the record failed to disclose any liens on the sheep, he might make more of a point of being prejudiced by lack of notice.

If the language of the opinion reading, "but it attached only to the right that the Kapposes had in and to the sheep. It was coextensive with that right, neither greater nor less," means to imply that the Kapposes only had property in value amounting to the difference between the value of the sheep and the amount of the mortgage, I cannot agree. The value of Kapposes' property was the whole value of the sheep, and that was their interest in the sheep. They had the title to the sheep and they did not own "a net," but the whole. Because the bank had bargained for the right to collect its loan in case of default first out of this particular property did not affect the nature of the property of the Kapposes nor the amount that they owned. Any creditor may finally cause me to have less property, but that does not mean that I own only the difference between the value of my property and my debts, or that I have a different or lesser interest than ownership in that property.