454 P.2d 782

James C. HONEA and Mary Honea Booker, Plaintiffs-Appellees,

v.

LACO AUTO LEASING, INC., a corporation, Defendant-Appellant.

No. 237.

Court of Appeals of New Mexico.

March 14, 1969.

Rehearing Denied April 29, 1969.

Sumner S. Koch, White, Gilbert, Koch & Kelly, Santa Fe, for appellant.

Robert S. Hammond, Rowley; Hammond, Murphy & Rowley, Clovis, for appellees.

## OPINION

OMAN, Judge.

This is a suit for the alleged tortious conversion of two electric pumps and motors, which had been installed in two irrigation wells on farm lands owned by plaintiffs and situate in Roosevelt County, New Mexico.

Plaintiffs leased their lands to a Mr. Kenner for a term of ten years commencing March 1, 1964, and ending February 28, 1974. This lease was not placed of record. Under the lease Kenner was to pay an annual rental of $1,500.00 on the first day of March of each year. There were provisions in the lease relating to drilling and equipping of irrigation wells. It was the obligation of Kenner to install pumps and motors in the wells at his expense, if the wells were capable of producing satisfactory supplies of water.

The two wells here involved were drilled and Kenner undertook to secure the necessary pumps and motors, but he had no money with which to purchase them. After negotiating with the pump company and defendant, it was agreed between the three of them that the pump company would install the pumps and motors to the satisfaction of Kenner, and that defendant would then pay the pump company.

A pump and motor were installed in one of the wells prior to May 5, 1965, which is the date on the invoice signed by Kenner to evidence the installation and his approval thereof. This invoice was then submitted by the pump company to defendant. Defendant paid the pump company by check dated June 17, 1965. The pump and motor were installed in the other well prior to June 11, and the same procedures were followed in getting payment therefor to the pump company from defendant. The amount of these payments was $4,100.00 for the pump and motor installed in each well.

The pump company gave no bill of sale or other instrument evidencing the transfer of title to the pumps and motors to either Kenner or defendant. Pursuant to their agreement, defendant and Kenner executed written instruments covering the pumps and motors, whereby defendant purportedly leased them to Kenner. The first of these instruments, which covered the pump and motor installed prior to May 5, was dated May 18, 1965, and the other lease, which covered the pump and motor installed prior to June 11, was dated July 1, 1965. At the time of executing each of the instruments, defendant and Kenner executed a "Notice of Ownership" describing the equipment and location thereof, and reciting that Kenner had leased the equipment from defendant and the title to the equipment remained in defendant. These Notices of Ownership were mistakenly filed for record in Curry County, but were later filed for record in Roosevelt County on May 19, 1966.

Some time after May 19, 1966, plaintiffs first became aware of the claims of defendant to ownership of the equipment, and they then got in touch with defendant and negotiated for its purchase from defendant. Defendant quoted plaintiffs the sums of $2,802.24 and $2,720.23 as the "payoff" under the equipment leases.

Plaintiffs and defendant were unable to come to any agreement as a result of their negotiations.

Kenner failed to make the rental payment of $1,500.00 to plaintiffs on March 1, 1967. By letter dated March 2, 1967, plaintiffs terminated the lease on the lands for non-payment of this rent. By letter to defendant, also dated March 2, 1967, plaintiffs, through their attorney, advised defendant that plaintiffs had terminated their lease on the premises by reason of Kenner's failure to pay the annual rental when due, and that defendant was not to attempt removal of the pumps and motors or to "disturb the possession and rights of" plaintiffs therein.

On March 14, 1967, defendant removed the pumps and motors from the wells and this suit followed. The trial court held for plaintiffs and awarded them judgment for what he found was the fair market value of the equipment as of March 14, 1967. Defendant has taken this appeal from that judgment.

It is apparent from the decision of the trial court that he concluded: (1) upon installation of the pumps and motors they became fixtures to the lands; (2) the equipment leases were " 'intended as security' within the meaning of Section 50A–1–201(37), N.M.S.A.1953, as amended"; (3) "under Section 50A–9–204, N.M.S.A.1953, as amended, the security interest of Laco [defendant] attached after the goods became fixtures, since same were installed before Laco paid for same"; and (4) "Plaintiffs' interest in the goods has priority over defendant's security interest under Section 50A–9–313(3), N.M.S.A.1953, as amended."

We seriously doubt the evidence supports the finding and conclusion that the pumps and motors became fixtures upon their installation in the wells. However, the result we reach is consistent with such a finding and conclusion, and, therefore, we shall assume the trial court was correct in so finding and concluding.

We also assume the correctness of the trial court's findings and conclusion that the equipment leases were, in fact, "intended as security within the meaning of Section 50A–1–201(37), N.M.S.A.1953, as amended." See also § 50A–9–102(2), N.M.S.A.1953.

This leads us to the matter of determining whether this security interest of defendant in the equipment attached after the equipment became fixtures, as held by the trial court. He reached this conclusion because (1) defendant did not pay the pump company until after the installation, (2) he found that the equipment was sold by the pump company to Kenner, and (3) the notices were not filed in Roosevelt County until May 19, 1966.

We do not understand that a security interest attaches only upon the actual payment of the purchase price. The trial court relied upon the provisions of § 50A–9–204, N.M.S.A.1953. The words "pay," "paid," or "payment" do not appear therein. Insofar as pertinent to the question here, this section of our statutes provides:

> "(1) A security interest cannot attach until there is agreement (subsection (3) of section 1–201 [50A–1–201]) that it attach and *value* is given and the debtor has rights in the collateral. It attaches as soon as all of the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching." (Emphasis added).

The trial court found that the equipment was sold " * * * after arrangements were made for the defendant * * * to finance and pay for same, * * *" There is no question that defendant promised the pump company that it would pay for the equipment, and that this promise was the

consideration relied upon by the pump company in making the installations.

Agreement is defined in § 50A–1–201(3), N.M.S.A.1953, as follows:

"'Agreement' means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this act (sections 1–205 [50A–1–205] and 2–208 [50A–2–208]). Whether an agreement has legal consequences is determined by the provisions of this act, if applicable; otherwise by the law of contracts (section 1–103 [50A–1–103]). * * *"

The bargain of the parties was made at the time defendant agreed to pay for the equipment, the pump company agreed to furnish the equipment, and Kenner agreed that defendant would have an interest in the equipment. A performance of these respective obligations under the agreement was subsequently accomplished by the parties in the order provided by their bargain.

■ Thus, whatever interest Kenner acquired in the equipment came to him impressed with defendant's purchase money security interest therein. Section 50A–9–107(b) provides:

"A security interest is a 'purchase money security interest' to the extent that it is:

" * * *;

"(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used."

See Comment, by Peter F. Coogan, as to when a security interest attaches, in I Bender's Uniform Commercial Code Service (Secured Transaction) § 3.02 at 168–9 (1967). See also the following cases as to the pre-code priority rights of a purchase money mortgagee: Davidson v. Click, 31 N.M. 543, 249 P. 100, 47 A.L.R. 1016 (1926); Smith & Ricker v. Hill Bros., 17 N.M. 415, 134 P. 243 (1913); Gray v. Kappos, 90 Utah 300, 61 P.2d 613 (1936).

■ The purchase money security interest of defendant was not enforceable until after the written security agreements had been signed by Kenner. Section 50A–9–203(1) (b), N.M.S.A.1953. In this case, the written security agreements were the instruments herein referred to as equipment leases. These security agreements were reduced to writing and signed by Kenner. There is no claim or suggestion that these written security agreements do not accurately reflect the prior oral agreement entered into between Kenner and defendant. The fact that they were not signed until after the installation of the equipment, and, thus, not enforceable at the time of the installations, did not prevent the attachment of defendant's security interest at the time of installation. See § 50A–9–204, supra.

Value is defined in § 50A–1–201(44), N.M.S.A.1953, as follows:

"(44). 'Value.' Except as otherwise provided with respect to negotiable instruments and bank collections (sections 3–303 [50A–3–303], 4–208 [50A–4–208] and 4–209 [50A–4–209]) a person gives 'value' for rights if he acquires them

"(a) in return for a binding commitment to extend credit or for the extension of immediately available credit whether or not drawn upon and whether or not a charge-back is provided for in the event of difficulties in collection; or

"(b) as security for or in total or partial satisfaction of a pre-existing claim; or

"(c) by accepting delivery pursuant to a pre-existing contract for purchase; or

"(d) generally, in return for any consideration sufficient to support a simple contract."

■ Defendant gave a binding commitment to extend credit, and this commitment

was acted upon. Defendant's promise to pay the pump company was consideration sufficient to support a simple contract. Thus, the requirement that "value" be given had been met, and this was prior to any installation. The actual fulfillment, and the time of fulfillment, of the obligation to make payment to the pump company are not determinative of the questions as to whether and when "value" was given.

Plaintiffs argue that, "Kenner had no rights in the collateral until it was installed and paid for, while immediately upon installation it became fixtures to plaintiffs' lands and subject to their rights." Kenner and defendant acquired rights in the equipment installed no later than the moment of installation, which was the earliest possible moment plaintiffs could have acquired any rights therein.

■ Apparently the underlying policy of § 50A–9–313, N.M.S.A.1953 is consistent with the majority rule under pre-code law, in that it gives priority to the fixture security interest over an antecedent interest in the real estate. See Gilmore, The Purchase Money Priority, 76 Harv.L.Rev. 1333, 1388 (1963); N. G. Shanker, An Integrated Financing System for Purchase Money Collateral: A Proposed Solution to the Fixture Problem Under Section 9–313 of the Uniform Commercial Code, 73 Yale L.J. 788, 791 (1963–64); II G. Gilmore, Security Interests in Personal Property, § 30.6 at 821, 832 (1965).

■ Under the circumstances here, the purchase money security interest of defendant should prevail over any rights plaintiffs may have acquired under their lease with Kenner. Without defendant's promise to pay the pump company, which was given in return for a purchase money security interest in the equipment, there would have been no installation by which the equipment could have become fixtures.

Since defendant's security interest did not attach to the equipment after it became fixtures, the validity of this security interest was not dependent upon a consent in writing by plaintiffs, as provided in § 50A–9–313(3), N.M.S.A.1953. Consequently, we need not decide whether the trial court was correct in finding that plaintiffs had given no such consent.

Although we are unable to determine from the record the extent of default by Kenner in making payments under the equipment leases at the time defendants took possession of the equipment, it appears there was a default, and there were unquestionably defaults on Kenner's part in the performance of other obligations imposed on him by these equipment leases. Under these circumstances, defendant was entitled to remove the equipment, pursuant and subject to the provisions of §§ 50A–9–313(5) and 50A–9–503, N.M.S.A.1953.

Plaintiffs admit that no injury resulted to their real property by the removal of the equipment, and the removal was accomplished without a breach of the peace.

Since this is a suit for conversion only, and since defendant was entitled to take possession of the equipment on March 14, 1967, it follows that the judgment must be reversed. We need not decide whether the court properly found the equipment to be worth $5,500.00 on March 14, 1967.

The judgment is reversed and the cause remanded with directions to dismiss plaintiffs' complaint.

It is so ordered.

MONTOYA, D. J., concurs.

SPIESS, Chief Judge (specially concurring).

I concur in the result reached in the opinion authored by Judge OMAN. It is my view, however, that the lien of the security interest of Laco Auto Leasing, Inc. in the property involved attached before installation.

The opinion, I think, correctly concludes that in accordance with § 50A–9–204(1), N.M.S.A., 1953, the agreement to finance the purchase of the property was concluded and value given before installation. I think

the buyer, Kenner, likewise obtained a property interest prior to installation.

The property could not have been taken to the farm for installation without identifying it as goods to which the contract referred. Consequently, under § 50A-2-501, N.M.S.A., 1953, the buyer, Kenner, obtained a property interest upon identification which necessarily occurred before installation.

According to my view, all events specified by § 50A-9-204(1), supra, took place prior to installation, and not concurrently therewith as indicated by the opinion. If, upon installation the property became a fixture, it became so subject to the lien of the security interest and this interest took priority under § 50A-9-313(2), N.M.S.A., 1953, over claims of the owners of the real estate (Honea).