**In re Jackob WANDLER and Carrie Dorothy Wandler, d/b/a Wandler Quarter Horse and Jack's Family Restaurant, Debtors.**

**Bankruptcy No. 84-05144.**

United States Bankruptcy Court,
D. North Dakota.

Aug. 7, 1987.

See also, 77 B.R. 728.

Ross Espeseth, Bismarck, N.D., for debtors.

James Geyer, Dickinson, N.D., for Liberty Nat'l Bank & Trust Co.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The matter before the court is a Motion To Avoid Lien, filed May 26, 1978, by Jackob and Carrie Wandler (Debtors). By its motion, the Debtors seek to avoid, pursuant to section 522(f) of the Bankruptcy Code, an alleged non-possessory non-purchase money security interest in household goods and implement or tools of the trade of the Debtors, asserted by Liberty National Bank and Trust Company of Dickinson (Liberty National). Liberty National concedes that the lien on household goods is avoidable, but resists the motion to avoid lien on farm implements and equipment purchased by the Debtors from Hank Schank. Evidence material to this matter was submitted at the June 11, 1987 confirmation hearing, although the present motion was not before the court for consideration at that time. The present motion was scheduled to be heard before the court on July 27, 1987. However, prior to that time, both parties agreed to submit the matter to the court for consideration without hearing, based upon the evidence as presented

at the June 11 hearing. The facts in this matter are relatively simple, and are as follows:

### Findings of Fact

On May 3, 1978, the Debtors obtained a $10,000.00 note from Liberty National due October 1, 1978, with interest accruing at the rate of 9.5%. The funds from this note were used to purchase machinery from Hank Schank with the said machinery being used as security for the note. On May 3, 1978, Jackob Wandler signed a security agreement giving Liberty National a security interest in "All Farm Machinery Now Owned Or Hereafter Acquired Including Equipment As Per Attached List". The attached list includes a listing of machinery purchased from Henry Schank. A financing statement covering "All Farm Machinery Now Owned And Hereafter Acquired" was properly filed May 4, 1978, with the Stark County register of deeds. The court does not have before it a complete record of the note and loan documentation concerning the $10,000.00 loan or renewals thereof. However, based upon the bank's comments sheets introduced into evidence, the May 3, 1978 note was renewed on various occasions, and consolidated with other loans of the Debtors at least by January 29, 1981. The consolidated note was in the amount of $194,988.38, due July 29, 1981, with interest accruing at the rate of 19%. This note was secured by machinery, vehicles, savings account, household goods, livestock, supplies and feed. A lapse in the comment sheet exists between June 4, 1979 and December 24, 1980, so the court is unable to ascertain from the documents whether the May 3 loan was renewed, paid off, or consolidated. However, Wandler testified that the money for the note was a continuing line of credit, and that the note has been renewed. Duane Anderson, president of Liberty National and the officer who dealt most closely with the Debtors, testified that the $10,000.00 issued in consequence of the May 3 note was advanced for purchase of the farm equipment. Anderson also testified that the Schank note was renewed.

### Conclusions of Law

Section 522(f) of the Bankruptcy Code, in pertinent part, provides:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

\* \* \* \* \* \*

(2) a nonpossessory, nonpurchase-money security interest in any—

\* \* \* \* \* \*

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor;

. . . .

11 U.S.C. § 522(f).

The Bankruptcy Code does not define "purchase-money security interest." The term is, however, defined by state law. Section 41–09–07 of the North Dakota Century Code provides that:

a security interest is a "purchase-money security interest" to the extent that it is:

. . .

\* \* \* \* \* \*

(2) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

N.D. Cent. Code § 41–09–07 (1981). Section 41–09–07 is identical to section 9–107 of the Uniform Commercial Code.

The Debtors used the proceeds of the May 3, 1978 note to purchase machinery. Liberty National has not disputed that the machinery was used in the Debtors trade. Thus on May 3, 1978, Liberty National had a valid purchase-money security interest under North Dakota Century Code § 41–09–07(2). The disputed issue in this case is whether the purchase-money security interest survived the renewal and consolidation of the original loan.

Several courts have addressed the issue of whether a purchase-money security interest survives a loan consolidation. The United States Court of Appeals for the Third Circuit has concluded that consolidation with a nonpurchase-money loan does not extinguish the purchase-money character of the original loan. *See, Pristas v. Landaus of Plymouth, Inc.,* 742 F.2d 797, 801 (3rd Cir.1984). The court in *Pristas* relies on the language of section 9–107 of the Uniform Commercial Code stating that a security interest is a purchase-money security interest "to the extent" it is taken by a person making advances enabling the debtor to acquire rights in the collateral. *Id.* at 801. Under this theory a purchase-money interest survives consolidation to the extent of the amount of the original purchase. *Id.* Thus the creditor is not able to stretch the purchase-money security interest to cover more than the value of the original purchase by consolidating the original purchase-money loan with other non-purchase-money loans. *See id.*

A problem with allowing a purchase-money security interest to survive consolidation is apportioning payments made on the consolidated loan between the purchase-money portion and the nonpurchase-money portion of the loan. There must be some method of determining when the original purchase price has been paid. In *Pristas* the court concluded that payments may be allocated based upon either a provision in the consolidation loan agreement or an allocation scheme provided by state statute. *See id.* In the absence of a contractual or statutory provision, however, courts have invalidated the purchase-money security interest rather than judicially creating a method of allocation. *See In re Luczak,* 16 B.R. 743 (Bankr. W.D.Wis.1982); *In re Coomer,* 8 B.R. 351 (Bankr. E.D.Tenn.1980); *In re Coronado,* 7 B.R. 53 (Bankr.D.Ariz.1980).

The United States Court of Appeals for the Ninth Circuit has also examined whether a purchase-money security interest survives a consolidating loan. *See In re Matthews,* 724 F.2d 798 (9th Cir.1984). In *Matthews* the court relied on section 9–107 of the Uniform Commercial Code. *Id.* at 800. Section 9–107 defines a purchase-money security interest as a security interest taken by a person who gives value enabling a debtor to "acquire rights in or the use of collateral if such value is in fact so used." The court in *Matthews* reasoned that the proceeds of the consolidated loan are used to discharge the original loan agreement secured by the purchase-money security interest. *Id.* at 800. The court determined that since the debtor already owned the collateral he could not use the consolidation loan proceeds to acquire any further rights in the collateral. *Id.* Thus the consolidating loan transforms the purchase-money security interest into a nonpurchase-money security interest.

■ This "transformation" theory is further supported by a novation analysis. In *In re Janz,* 67 B.R. 553 (Bankr. D.N.D. 1986) this court reasoned that if a loan consolidation is merely a renewal then the parties are still operating under the original contract and the purchase-money security interest is still valid. If, however, the parties intended the consolidated loan to replace the original loan, the purchase-money security interest is extinguished with the original loan agreement. *Id.* at 556. A novation is the substitution of a new obligation for one already existing. 58 Am. Jur.2d *Novation* § 1. It arises only when the parties mutually agree that the existing obligation be discharged and the new obligation substituted in its place. The parties must clearly intend to discharge the original obligation for there to be a novation. 58 Am.Jur.2d *Novation* §§ 12, 20.

■ The rationale of the transformation theory, that the parties use the proceeds of the consolidation loan to discharge the original loan, firmly supports characterizing the consolidation agreement as a novation. While not directly on point, the North Dakota case *Thet Mah v. First Bank of North Dakota,* 336 N.W.2d 134 (N.D.1983) indicates that the North Dakota court would also characterize a loan consolidation as a novation. In *Thet Mah* the North Dakota court determined that a creditor gave value enabling the debtor to acquire rights in property, even though the creditor did not disburse loan proceeds until well after the property was delivered to the debtor's busi-

ness. In the process of analyzing what constitutes "giving value" sufficient to create a purchase-money security interest, the North Dakota court stated, "The official comments to the Uniform Commercial Code § 9–107 [N.D.C.C. § 41–09–07], reflect that the value given must be present consideration and cannot be taken as security for, or in the satisfaction of, a pre-existing claim or antecedent debt." *Id.* at 138. Thus it appears that the North Dakota court would not consider the value given in a consolidating loan sufficiently contemporaneous consideration to create a purchase-money security interest in the lender. *See id.* Additionally, the court apparently concluded that the satisfaction of a pre-existing debt does not constitute a giving of value to enable the debtor to acquire rights in the collateral sufficient to create a purchase-money security interest. *Id.*

In the instant case, creditor's original $10,000.00 note secured by a purchase-money security interest was consolidated with other loans, at least by January 29, 1981. When Liberty National gave the proceeds of the consolidation loan to the Debtors, it did not create in the Debtors any further rights in the machinery. The Debtors already had all of the rights possible in the machinery, use and possession. Additionally, the consolidation loan was issued, in part, to retire the original loan. Thus both parties intended to discharge the original contract in which Liberty National had a purchase-money security interest and to substitute the consolidation loan agreement. The effect of this substitution was a novation destroying Liberty National's purchase-money security interest. Accordingly, for the reasons stated, the Debtors' Motion to Avoid Lien is GRANTED. The purchase-money security interest arising from Liberty National's original $10,000.00 loan of May 3, 1978 is declared invalid. The treatment afforded Liberty National in Class 4 of the First Modified Plan in consequence of its now avoided lien in machinery and equipment is consistent with this result.

IT IS SO ORDERED.