**In re Blaine JANZ and Leona Janz, Debtors.**

**Bankruptcy No. 86–05514.**

United States Bankruptcy Court, D. North Dakota.

Oct. 17, 1986.

503 F.Supp. at 963 (emphasis added).

Richard Olson, Minot, N.D., for Bank.

Sheldon Smith, Bismarck, N.D., for debtors.

Phillip Armstrong, Minot, N.D., trustee.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The matter before the court is a Motion To Invalidate Lien Upon Exempt Property, filed July 28, 1986, by the Debtors, Blaine and Leona Janz (Debtors). The State Bank of Towner filed an objection to the motion on July 31, 1986, and also objected to the claim of exemptions on the property subject to this motion. A hearing was held before the undersigned on September 29, 1986. The material facts are as follows:

## FINDINGS OF FACT

The Debtors filed their Chapter 7 Petition on June 12, 1986. Blaine Janz is listed on their Petition as a trucker and farmer. The first meeting of creditors was held on July 28, 1986.

In January, 1982, the Debtors purchased the ranch assets of Burton Hutton consisting of livestock, machinery and equipment. In addition, certain real property was leased from Hutton. The machinery and equipment purchases were memorialized by a purchase and sale agreement dated January 28, 1982, and signed by the Debtors as well as Mr. Hutton. The purchase price of the ranch property was $370,000.00 in consequence of which, the Debtors gave Hutton a note and Hutton filed a financing statement against the property in question.

On February 4, 1983, the Debtors arranged a loan from Towner State Bank for the purpose of paying off the Hutton obligation. The bank loaned the Debtors $160,000.00 which, as reflected in a document entitled Release and Agreement, resulted in a direct cash payment to Hutton of $122,571.87. The Debtors executed a note in the sum of $160,000.00 to the bank. In addition, the Debtors executed a new note in favor of Hutton in the sum of $154,496.13. In consequence of the new note and the cash payment, Hutton released his interest in the machinery, equipment and livestock. On the same date, the Debtors executed security agreements extending the bank a security interest in all farm equipment, all livestock, equipment, supplies and crops. Financing statements covering this property were filed in the appropriate register of deeds offices.

Later on in 1984 the bank had the Debtors sell out and the Debtors liquidated most of their machinery and cattle although the notes reflect a current balance owing the bank of approximately $164,515.13, the outstanding obligation owing to the bank was written down to $28,000.00 according to testimony of James Williams, one of the bank's officers.

The two items of equipment which are the subject of the bank's present motion are a 1050 Moline tractor and a 7050 Allis Chalmers tractor, both of which were part of the Hutton purchase and which constituted a portion of property offered for sale by the bank at an auction conducted on October 10, 1984. Although listed on the sale bill, these two tractors were not sold because the bids received did not exceed the minimum floor price which had been established by the bank.

Blaine Janz testified that the current value of the Moline tractor is $400.00 to $500.00 and that the current value of the Allis Chalmers tractor is $300.00 to $400.00. It is worth noting that on the purchase and sale agreement entered into between the Debtors and Hutton back in 1982 these tractors carried values of $4,000.00 and $18,500.00 respectively. Mr. Williams testified that in his opinion the current value of the two tractors is $10,-000.00 but Mr. Williams was unaware of their present condition which, according to Blaine Janz, is not particularly good. Perhaps the best testimony bearing on the question of value is that of Ken Mongen, a former employee of the bank, who was involved in the 1984 auction. It was his opinion that the value of the two tractors together is closer to $5,000.00. Based upon the testimony of these individuals, the court concludes that the current value of the two tractors is $5,000.00.

The Debtors' principal income is derived from Blaine Janz's employment as a trucker. They did no farming at all in 1986 and did very little farming in 1985 except for taking care of 250 head of cattle. According to Blaine Janz, he has an arrangement whereby he will custom feed cattle and it is his expressed intention to do more custom feeding after the bankruptcy is over. To the extent that he does custom feeding of cattle, he claims the two tractors are necessary to that end. The tractors have been declared as exempt property or the Debtors' schedule B-4.

## CONCLUSIONS OF LAW

Section 522(f) of the Bankruptcy Code, in part, provides as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

. . . . .

(2) a nonpossessory, nonpurchase-money security interest in any—

. . . . .

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor. . . .

11 U.S.C. § 522(f)(2)(B).

The bank contends it has a purchase-money security interest in the two tractors and is thus exempt from application of section 522(f). Section 41–09–07 of the North Dakota Century Code, which is identical to section 9–107 of the Uniform Commercial Code, defines "purchase money security interest" as follows:

A security interest is a "purchase-money security interest" to the extent that it is:

1. Taken or retained by the seller of the collateral to secure all or part of its price; or

2. Taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such a value is in fact so used.

N.D.Cent.Code § 41–09–07 (1983).

The State Bank is obviously not the seller of the collateral. Thus, the only reasonable basis by which the State Bank could claim that it has a purchase-money security interest is under the second definition: that it enabled the debtor to acquire rights in or the use of the collateral.

Courts are in disagreement as to the effect which a renewal note, issued by a debtor to a creditor, has on the purchase-

money status of a security interest which that same creditor had previously acquired from the debtor. *Matter of Richardson,* 47 B.R. 113, 117 (Bankr.W.D.Wisc.1985); *In re Gayhart,* 33 B.R. 699 (Bankr.N.D.Ill. 1983); *In re Russell,* 29 B.R. 270 (Bankr. W.D.Okla.1983). If a true renewal of the note occurs, then the purchase-money security interest continues on. However, when a novation occurs, then the purchase-money status of the security interest is extinguished. Courts have generally held, however, that a renewal may be found only where the same parties to the old note enter into the new note. *Richardson,* 47 B.R., at 117. In the instant case, the State Bank is a third party, which became involved in a refinancing transaction approximately one year after the Debtors had originally entered into a purchase arrangement with Hutton. When a non-seller lender, such as the State Bank, has given value prior to the time that a debtor acquires rights in the collateral, the finding that the lender enabled the debtor to acquire rights in the collateral, as required by section 41-09-07, may be possible. *Matter of Richardson,* 47 B.R. 113, 116 (Bankr.W.D. Wisc.1985); *Thet Mah & Assoc. v. First Bank of N.D. (NA),* 336 N.W.2d 134, 138 (N.D.1983). However, when a purchase contract is refinanced by a third party, the third party no longer has a purchase-money security interest, which the seller or original lender had. *In re Conn,* 16 B.R. 454, 460 (Bankr.W.D.Ky.1982).

In the instant case, the Debtors had rights in the collateral beginning on January 28, 1982, when the Debtors entered into the purchase and sale agreement with Hutton. Subsequent to that time, the Debtors owned livestock, machinery, and equipment, purchased from Hutton, and also had possession of the purchased property. Hutton, in exchange for the sale of the equipment, obtained a promissory note from the Debtors, and also purported to retain a security interest in the property. Not until February 4, 1983, in excess of a year later, did the State Bank advance the Debtors money to pay off the obligations to Hutton. The law appears to be clear that when a debtor borrows money from a third party, to pay off the holder of a purchase-money security interest in the collateral, the effect is to extinguish the purchase-money security interest. *Matter of Richardson,* 47 B.R. 113, at 118. Thus, the State Bank of Towner does not have a purchase-money security interest in the property which is the subject of this dispute.

The next issue which the court must address is whether the Debtors' equipment constitute implements, or tools, of the trade of the debtor, sufficient for the debtor to avoid the security interest of the State Bank.

The law is clear, at least in this circuit, that large items of farm equipment may constitute "implements, or tools, of the trade". *In re LaFond,* 791 F.2d 623, 626 (8th Cir.1986). Generally, however, in order to avoid a non-possessory lien in implements or tools, of the trade, the debtor must, on the date of the petition, be engaged in the trade to which the implements or tools belong. *Matter of Richardson,* 47 B.R., at 118; *In re Johnson,* 19 B.R. 371, 374 (Bankr.D.Kan.1982). However, when the debtor has only temporarily ceased the vocation to which the implements or tools belong, the tools of the trade may still be exemptable. *Id.,* at 375. The Eighth Circuit has held that one should consider the intensity of the debtor's past farming activities and the sincerity of his intentions to continue farming, as well as evidence that the debtor is legitimately engaged in a trade which uses specific implements or tools exempted and in which lien avoidance is sought. *In re LaFond,* 791 F.2d, at 626. In the instant case, the Debtors may not currently be actively involved in farming. However, it is a bit ludicrous for the State Bank to argue that the Debtors should not be entitled to section 522(f)(2)(B) exemptions, for the reason that they are not currently farming, when the State Bank

appears to be the principal reason and cause for the Debtors temporary exit from farming. Simply because the Debtor is now engaged in the trucking business, as a principal means to put bread on the table, does not disqualify them from avoiding the bank's liens in tractors which the Debtors need to resume a farming operation even if on a limited basis.

The State Bank has not *specifically* objected to the Debtors' claim of exemptions within the 30 day time period as required by Bankruptcy Rule 4003. However, in its objection to Motion To Invalidate Lien Upon Exempt Property And Request For Turnover, filed July 31, 1986, the bank stated in paragraph 4.0, that the property is not entitled to be exempt. Whether this general exemption, in itself, is sufficient to qualify as an objection to exemptions within the 30 day time period following the first meeting of creditors is questionable. However, based upon the assumption that the objection is timely, the court concludes that the Debtors' $5,000.00 exemption pursuant to N.D.Cent.Code § 28–22–03, which is the basis for exempting the Debtors' interest in the tractors, is allowable. The court has found that the value of the tractors are $5,000.00.

Accordingly, and for the reasons stated herein, the Debtors' Motion To Invalidate Lien Upon Exempt Property is GRANTED. The lien is declared invalid and the Debtors shall execute releases necessary to clear such liens from any public record.

IT IS SO ORDERED.