**In re Marian HANSEN dba Farmer, Debtor.**

Bankruptcy No. 87–01450S.
Contested No. 71345.

United States Bankruptcy Court,
N.D. Iowa.

April 1, 1988.

Donald H. Molstad, Sioux City, Iowa, for debtor.

Wilford L. Forker, Sioux City, Iowa, trustee.

Martin McLaughlin Asst. U.S. Atty., Sioux City, Iowa.

## MEMORANDUM AND ORDER Re: Avoidance of Liens

MICHAEL J. MELLOY, Chief Judge.

The matter before the Court is Marian Hansen's (Debtor) Motion to Avoid the Farmers Home Administration's (FmHA) Liens on certain property claimed exempt pursuant to Iowa Code § 627.6(12) (1987). The Court, having reviewed the evidence and arguments of counsel, now makes the following Findings of Fact, Conclusions of Law, and Orders pursuant to Fed.R. Bankr.P. 7052. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (O).

## FINDINGS OF FACT

The Debtor filed a petition for relief under Chapter 7 on June 24, 1987. The Debtor is a farmer. The Debtor seeks to avoid the FmHA's lien in the following property:

### 1986 Security Agreement

| | Purchase Money (PM) or Pre-enactment (PE) Purchase |
|---|---|
| JD 4320 Tractor w/loader | in dispute |
| JD A Tractor | PE |
| JD 2 row Combine, self propelled corn head | PE |
| JD 4 row Cultivator | PE |
| Dohrman JD gears 7 × 12 Wagon w/hoist | PE |
| JD 2 row Cultivator | PE |
| 5 × 8 straight Wagon | PE |
| JD 7' mtd. Mower | PE |
| IHC 4 sec. Drag | PE |
| IHC side delivery Rake | PE |
| Feed Bunk | PE |
| JD 494–A Planter | PE |
| Oliver 5 × 16 Plow | PE |
| Valley 44' Elevator | PE |
| Open Hog House | PM* |
| IHC 1050 Grinder-mixer | PE |
| DeLaval Pipe line milker | PE |
| Homemade 14 × 26 Hog house | PE |
| Homemade 275 gal. Sprayer | PE |

### 1978 Security Agreement

| | |
|---|---|
| Oliver 1750D Tractor | PE |
| JD A Tractor | PE |
| JD 45 Combine Self-propelled corn head | PE |
| [JD Gears, 7 × 12 w/hoist Dohrman Wagons | PE |
| JD 4 row Cultivator | PE |
| JD 2 row Cultivator | PE |
| JD 227 Cornpicker | PE |
| 5 × 8 straight Wagons | PE |
| JD 7' mtd. Mower | PE |
| Elevator | PE |
| IHC 4 sec. Drag | PE |
| Spreader | PE |

| | Purchase Money (PM) or Pre-enactment (PE) Purchase |
|---|---|
| IHC Side Delivery Rake | PE |
| Feed Bunks | PE |
| Wards 80 bu. Feeder | PE |
| JD 490 Planter | PE |
| Oliver 5–16 Plow | PE |
| Valley 44' Elevator | PE |
| Open Hog House | PM* |
| IHC 1050 Mixer | PE |
| DeLaval Pipe Line Milker | PE |
| Baler | PE |

\* = parties stipulated that the interest is a purchase money security interest and not subject to lien avoidance.

---

The parties agree that the FmHA had a valid pre-enactment lien in all items of pre–1978 machinery except as those noted. The Debtor and the FmHA have executed a number of notes and security agreements. The nature of the pertinent notes are summarized as follows:

| Date | Pymts | Int. | Face Amount | Disposition | Borrower |
|---|---|---|---|---|---|
| 4/28/1978 | 8 | 8% | $ 4,500 | Consolidated | Earland/Marian |
| 3/28/1979 | 6 | 8½% | $ 11,100 | Consolidated | |
| 6/29/1983 | 8 | 7¼% | $ 13,052.05 | Consolidation of 4/28/78 & 3/28/79 loans | Marian |
| 9/11/1985 | 9 | 7¼% | $ 14,620.94 | Rescheduling of the 6/29/83 note | Marian |
| 4/01/1977 | 7 | 5% | $ 5,300.00 | Rescheduled | Earland/Marian |
| 6/29/1983 | 8 | 3% | $ 3,671.26 | Rescheduling of 4/1/77 loan | Marian |
| 9/11/1985 | 8 | 3% | $ 3,855.25 | Rescheduling of 6/29/83 loan | Marian |

---

The note dated June 29, 1983 is marked consolidation and it indicates that it consolidated the April 28, 1978 and the March 28, 1979 loans. The June 29, 1983 operating loan contains the following language:

> If "Consolidation and subsequent loan," "Consolidation," Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, *but not in satisfaction of the unpaid principal and interest on the following described note(s)* or assumption agreements(s) (new terms): (emphasis added)

The June 29, 1983 EM loan also contains the same language and indicates that it is a rescheduling of a loan of April 1, 1977.

## DISCUSSION

### I. John Deere Tractor & Purchase Money Security Interest

The parties stipulated that the Debtor financed and acquired the John Deere tractor through the State Savings Bank of Sloan (Bank) in the spring of 1979. On March 28, 1979, the Debtor signed a promissory note to the FmHA incurring an obligation to repay the FmHA $11,100. The Debtor then applied part of the loan proceeds to pay off the indebtedness with the Bank. The parties stipulate that the security interest of the Bank was not assigned to the FmHA as a part of this transaction.

The Debtor contends pursuant to Iowa Code § 554.9107 the FmHA is not a purchase money security interest holder and the lien on the John Deere tractor can be avoided under 11 U.S.C. § 522(f) since it constitutes a non-possessory, non-purchase

money security interest in an exempt asset. The FmHA, however, contends that pursuant to Iowa Code § 554.9107 that it is a purchase money security interest holder because "but for the fact that the Debtor had applied for a FmHA loan which was being processed at the time the Debtor sought and obtained the financing from the Bank to purchase the John Deere tractor, the Debtor would not have obtained the funds from the Bank." The Debtor rebuts the FmHA's argument by asserting that the $11,100 promissory note represents a refinancing of an existing obligation between the Debtor and the FmHA and that the proceeds were simply applied to pay off the loan with the Bank.

Section 522(f)(2)(A) of the Bankruptcy Code provides in pertinent part:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent such lien impairs an exemption to which the debtor would have been entitled ... if such lien is ... a nonpossessory, nonpurchase money security interest in any ... tools of the trade of the debtor ...

Therefore, if the security interest held by a creditor is a purchase money security interest it is not avoidable under § 522(f)(2).

The Bankruptcy Code does not define "purchase money security interest," therefore, the Bankruptcy Court must apply state law in determining whether or not a purchase money security interest exists. Once the status of the security interest is determined, federal law dictates whether or not the interest will be enforceable in bankruptcy. *See, Lewis v. Manufacturers Nat'l. Bank,* 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 373 (1961). (State law determines status of creditors claims; Bankruptcy court then applies federal bankruptcy law to determine which claims may be avoided); *Pristas v. Landaus Plymouth,* 742 F.2d 797, 800 (3d Cir.1984); *Geist v. Converse County Bank,* 79 B.R. 939 (D.Wyo.1987); *In re Billings,* 63 B.R. 717 (D.Col.1986) *aff'd In re Billings,* 838 F.2d 405, 3 Bankr. L.Rep. (CCH) ¶ 72,181 (10th Cir. January 27, 1988); *Matter of Franklin,* 75 B.R. 268 (Bankr.M.D.Ga.1986).

Iowa Code § 554.9107 defines a purchase money security interest:

A security interest is a purchase money security interest to the extent that it is a) taken or retained by the seller of the collateral to secure all or part of its price; or

b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral of such value is in fact so used.

The Official Comment to § 9107(b) indicates that a purchase money security interest arises when a party other than a seller gives present consideration enabling the buyer to acquire the item.

■ FmHA claims that it falls under the § 554.9107(b) definition of a purchase money security interest holder because of the "reasonable assumption" that the Bank made the loan to the Debtor with the expectation of "quick repayment" and therefore the FmHA gave value before the Debtor acquired rights in the collateral and established a purchase money security interest in the John Deere tractor and loader. However, there is no evidence in the record before the Court regarding the Bank's expectations or that the Bank was even aware of the pending FmHA loan application. It is merely an assertion by the FmHA.

The FmHA in support of its contention that it is the holder of the purchase money security interest relies on *In re Janz,* 67 B.R. 553, 556 (Bankr.D.N.D.1986) for the proposition that "when a non-seller lender ... has given value prior to the time that a debtor acquires rights in the collateral, the finding that the lender enabled the debtor to acquire rights in the collateral ... may be possible." *citing Thet Mah & Assoc. v. First Bank of N.D.(NA),* 336 N.W.2d 134, 138 (N.D.1983); *Matter of Richardson,* 47 B.R. 113, 116 (Bankr.W.D.Wisc.1985). There is no evidence presented in the record before the Court that the Bank relied upon the pending loan application with the FmHA to finance the transaction en-

abling the Debtor to purchase the John Deere tractor and loader. Furthermore, the *Janz* case itself provides: "[T]he law appears to be clear that when a debtor borrows money from a third party, to pay off the holder of his purchase money security interest in the collateral, the effect is to extinguish the purchase money security interest." 67 B.R. at 556 *citing Matter of Richardson,* 47 B.R. at 118. Clearly, the Debtor's application of the FmHA loan proceeds to pay off the Bank is exactly the situation discussed in *Janz* where the debtor borrows money from a third party and pays off the holder of a purchase money security interest.

The FmHA's contention that the Debtor failed to establish the non-purchase money security interest of the lien sought to be avoided is without merit. The FmHA's allegations that the Bank may have had contact with the FmHA regarding the loan are insufficient to require that the Debtor rebut a possibility and therefore, the FmHA's argument is without merit regarding the Debtor's burden of proof.

## II. Pre–Enactment/Novation

The Debtor contends that the various obligations which existed between the Debtor and the FmHA in 1978 "have been consolidated and have been rewritten and were new obligations with varying terms and interest rates than that which existed under the 1979 note." The Debtor also notes that the parties to the agreement have changed because the loans in existence in 1978 were joint obligations between the Debtor and her husband, Earland Hansen, who passed away in 1982. The Debtor further asserts "that after her husband's death all of the obligations with FmHA were rewritten or consolidated and new funds were advanced to change the nature of the Debtor's farm operation." The Debtor claims that these acts constituted a novation under Iowa law and would entitle the Debtor to avoid the liens pursuant to 11 U.S.C. § 522(f).

Relying on *U.S. v. Security and Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), the FmHA asserts that the Debtor cannot avoid the FmHA security interest in machinery that served as the FmHA collateral prior to the enactment of the 1978 Bankruptcy Code. The FmHA also contends that the consolidation and rescheduling did not constitute a novation, thereby rendering the date of novation the applicable date rather than the original pre-code date in determining whether 11 U.S.C. § 522(f) applies. The Debtor has the burden of demonstrating that all of the elements of lien avoidance under § 522(f) are satisfied. *In re Shands,* 57 B.R. 49, 50 (Bankr.D.S.C.1985); *Matter of Weinbrenner,* 53 B.R. 571, 578 (Bankr.W.D.Wisc. 1985).

■ A pre-Code enactment lien that attaches to post–1978 after acquired property is subject to lien avoidance relying upon Iowa Code § 554.9203. Section 554.9203 provides in pertinent part:

1. Subject to the provisions of section 554.9208 on the security interest of a collecting bank and section 554.9113 on a security interest arising under the Article on Sales, the security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless

    a. the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ... and;

    b. value has been given and;

    c. the debtor has rights in the collateral.

2. A security interest is attached when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all the events specified in subsection 1 have taken place unless explicit agreement postpones the time of attaching.

There can be no enforceable security agreement that pre-dates the Code enactment if the collateral is obtained after 1978 since the lien does not attach until the debtor obtains rights in the collateral.

The Court notes at the outset that the United States Bankruptcy Court for the Southern District of Iowa has addressed

the issue before the Court on a number of occasions. The issue presented in those cases was whether the consolidation, rescheduling, or refinancing of a FmHA loan constituted a novation. *In the Matter of Dukes*, Case No. 87–830W (Bankr.S.D.Iowa February 29, 1988) [available on WESTLAW, 1988 WL 58009]; *In the Matter of Scanlan*, Case No. 86–02870W (Bankr.S.D. Iowa July 30, 1987) [available on WESTLAW, 1987 WL 46800]; *In the Matter of Hesse*, Case No. 86–760D (August 15, 1986) [available on WESTLAW, 1986 WL 20795]; *In the Matter of Eakes*, Case No. 83–01647C (Bankr.S.D.Iowa August 21, 1984), *aff'd subnom United States of America v. Eakes*, 76 B.R. 681 (S.D.Iowa 1985). In each of these cases the Bankruptcy Court for the Southern District of Iowa concluded that no novation occurred after examining the relevant Iowa law on novation and the Supreme Court precedent set out in *U.S. v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). This Court concurs in the well reasoned opinions of the Southern District.

The United States Supreme Court held in *U.S. v. Security Industrial Bank*, 459 U.S. at 82, 103 S.Ct. at 414, that Congress did not intend to apply 11 U.S.C. § 522(f) retrospectively to security interests obtained prior to the Bankruptcy Codes November 6, 1978 enactment date. As noted in *Dukes*, slip op at 4, "courts have recognized an exception to this rule where pre-code liens have been extinguished and replaced by loans and security agreements executed after the enactment date" citing *In re Averhoff*, 18 B.R. 198 (Bankr.N.D.Iowa 1982), *Matter of Hallstrom*, 86–0370C slip op. at 3 (Bankr.S.D.Iowa September 8, 1986); *See In re Hansen* 86–00638F (Bankr.N.D.Iowa March 12, 1987).

In *Hansen*, this Court set out the four elements of a novation under Iowa law.

*citing Eitzen's Estate v. Lauman*, 231 Iowa 1169, 3 N.W.2d 546 (1942).[1] The elements of a novation are as follows:

> It is the general and well recognized rule that the necessary legal elements to establish a novation are parties capable of contracting, valid prior obligation to be displaced, the consent of all the parties to the substitution, based on sufficient consideration, the extinction of the old obligation and the creation of a new one.

*Wade & Wade v. Central Broadcasting Co.*, 227 Iowa 422, 288 N.W. 439, 443 (1939). The critical element is the intention of the parties to extinguish the existing debt by means of a new obligation. *In the Matter of Dukes*, slip op. at 5 *citing Tuttle v. Nichols Poultry and Egg Co.*, 240 Iowa 199, 35 N.W.2d 875, 880 (1949). A novation or substituted contract, is "a contract that is itself accepted by the obligee in satisfaction of the obligor's existing duty." *In re Hansen*, slip op. at 4 *citing Sergeant v. Leonard*, 312 N.W.2d 541 (Iowa 1981).

In *Averhoff*, 18 B.R. at 201–202, this Court found that a novation had occurred because the creditor had "refinanced or flipped" the debtors "first and second note and agreements, each time extending additional credit and receiving new collateral." In footnote 1 this Court noted that the "renewal of an existing loan," in connection with an extension of new credit is commonly referred to as "flipping" 18 B.R. at 200 *citing In re Ellis*, 1 B.C.D. 798, 800 (Bankr.S.D.N.Y.1975).

The Debtors rely upon *In re Yoder*, 32 B.R. 777, 782 (Bankr.W.D.Pa.1983) as authority for the proposition that even though the language previously quoted (at p. 3) on the FmHA promissory note regarding the consolidation and rescheduling does

---

1. *See In re Nichols*, 1988 WL 53381, B. No. 87–01748S (Bankr.N.D.Iowa February 29, 1988). (Debtor unable to avoid lien of assignee of a purchase money security agreement even though a new note and security agreement were executed between creditor and debtor, purchase money security interest continued since subsequent security agreement specifically stated parties intended a continuation); *In re Hagen*, 1987 WL 46572, B. No. 86–01874M, (Bankr.N.D.Iowa July 9, 1987) no novation occurred notwithstanding the various renewals of the original transactions, intent to extinguish original security agreement and substitute the new ones was not proven); *In re Butler*, 1987 WL 46571, 86–01651C (Bankr.N.D.Iowa May 28, 1987) (Purchase money security interest continued although assignee and Debtor entered into a second agreement advancing additional money not intended to pay off the original debt, the agreement specifically provided the purchase money security interest would continue it).

not remove the prior obligation, the Pennsylvania bankruptcy court found that a novation had occurred. However, the *Yoder* court in concluding that a novation had occurred relied upon the following facts. The terms in the new note had been substantially changed to a higher interest rate and there was a change in the terms of payment from the earlier note and additional security was given. Essentially the *Yoder* Court faced the same facts as this Court previously faced in *In re Averhoff.* However, these facts are not present in the case at bar. *In the Matter of Dukes,* slip op. at 5, Judge Jackwig stated:

> The debtors are correct in pointing out that the factors this court utilizes in assessing the parties intent are whether new money was advanced, whether the debtors' payments were increased, whether additional collateral was provided by the debtors and whether a new security agreement was executed. Cite omitted. However, there is no need to resort to rules of construction where the intent of the party is expressed in clear and unambiguous language. *Citing State v. Starzinger,* 179 N.W.2d 761, 764 (Iowa 1970).

The Tenth Circuit in *In re Billings,* 838 F.2d 405, 3 Bankr.L.Rep. (CCH) ¶ 72,181 (10th Cir.1988) discussed whether the refinancing of a purchase money loan, by which the old note and security agreement were cancelled and replaced by a new note and security agreement, extinguish the creditor's purchase money security interest in debtors' collateral, so that debtors may now avoid the lien and claim the collateral as exempt household goods (the transformation rule). The creditor was the assignee of a purchase money security interest in furniture. At the request of the debtors, the creditor refinanced the obligation reducing the debtors monthly installment payments. "The parties cancelled the old note and substituted therefore a new note and security agreement; this note extended the time for repayment and increased the interest rate." 838 F.2d 405, 3 Bankr.L. Rep. (CCH) ¶ 72,181. The creditor did not take any additional collateral as security

and only $9.67 was loaned as additional money. The debtors sought lien avoidance on the household goods arguing that the refinancing automatically extinguishes the purchase money security interest. The bankruptcy court had previously denied the motion to avoid the lien under 11 U.S.C. § 522(f) and denied confirmation of the debtors' Chapter 13 plan. The district court affirmed. 63 B.R. 717 (D.Col.1986). The Tenth Circuit affirmed the bankruptcy court and district court decisions in a well-reasoned opinion discussing extensively the "transformation rule" and its inapplicability.

The Tenth Circuit stated that the "transformation rule"—refinancing a purchase money loan by paying off the old loan and extending a new loan automatically extinguished the purchase money character of the original loan—has been followed in a number of decisions. 838 F.2d 405, 3 Bankr.L.Rep. (CCH) ¶ 72,181 *citing Dominion Bank of Cumberlands v. Nuckolls,* 780 F.2d 408, 413 (4th Cir.1985); *In re Matthews (Matthews v. TransAmerica Financial Services),* 724 F.2d 798, 800 (9th Cir.1984) (per curiam); *In re Manuel (Roberts Furniture Company v. Pierce),* 507 F.2d 990, 992–993 (5th Cir.1975). The Tenth Circuit discussed the two underlying rationales behind the transformation rule: 1) purchase money security interest simply cannot exist when collateral secures more than its purchase price (citations omitted) and 2) other courts view the refinancing transaction as creating a new loan to pay off an antecedent debt.

The Tenth Circuit then discusses the problems with the two underlying rationales of the transformation rule. "The problem with the first rationale ... is that it ignores the precise wording of the Uniform Commercial Code. Section 9–107 of the U.C.C. provides that a security interest is a purchase money security interest 'to the extent' that the loan enables the debtor to purchase new property. This language would be meaningless if an obligation could never be considered only partly a purchase money debt." 838 F.2d 405, 3 Bankr.L. Rep. (CCH) ¶ 72,181 (citations omitted).

The court goes on to note that "the problem with the second rationale of the transformation rule is ... it *ignores the possibility that the refinancing merely renewed the debt, rather than creating a new debt.* Certainly the prior debt could be satisfied and a new debt created by a novation extinguishing the old purchase money loan. But this should not occur automatically with every amended or renewed note." (emphasis added) 838 F.2d 405, 3 Bankr.L.Rep. (CCH) ¶ 72,181. *See Note The Transformation Rule Under § 522 of the Bankruptcy Code of 1978,* 84 Michigan Law Review 109, 119 (1985) at footnote 63 *citing In re Gayhart,* 33 B.R. 699, 701 (Bankr.N.D.Ill.1983) ("a new note given in lieu of an existing note between the same parties and for the same indebtedness, even at a higher rate of interest and due at a later date, is not given for new consideration, and therefore, does not constitute a novation").

The Tenth Circuit provides an excellent policy reason against the transformation rule:

> The basis problem with the automatic "transformation" rule is that is discourages creditors who have purchase money security interests from helping their debtors work out of financial problems without bankruptcy and without surrendering the collateral securing the debt. (citations omitted) The instant case is an excellent example. These debtors apparently needed lower monthly payments on their debt. In a "transformation" jurisdiction the creditor could not cooperate without giving up its right to protect its security if debtors filed bankruptcy. 838 F.2d 405, 3 Bankr.L.Rep. (CCH) ¶ 72,181.

Although the FmHA does not claim a purchase money security interest in the collateral which the Debtor seeks to avoid the liens, the analysis in the *Billings* decision clearly applies because if the rescheduling/consolidation of the debt constituted a novation and extinguished a note and security interest executed before the enactment of the 1978 Bankruptcy Code and created a separate and distinct obligation, then the security interest attached after the Code enactment date subjecting it to lien avoidance. *Billings* 838 F.2d 405, 3 Bankr.L.Rep. (CCH) ¶ 72,181. *citing First National Bank and Trust Co. v. Daniel,* 701 F.2d 141 (11th Cir.1983) (per curiam). The *Daniel* court faced the same issue present in the case at bar; whether refinancing extinguishes a note and security interest executed before the enactment of the Bankruptcy Code and thereafter created a separate and distinct obligation with the security interest attaching after the enactment date of the Code. The *Daniel* court held that a new note which merely extended the payment period and which was secured by the same collateral did not constitute a novation under Georgia law. 701 F.2d at 142. Therefore, the *Daniel* court concluded that such a renewal note executed after the Code went into effect did not create a lien eligible for avoidance under 11 U.S.C. § 522(f). *Id.*

The Court concludes based upon the well-reasoned opinions of the Tenth Circuit and the Bankruptcy Court for the Southern District of Iowa that the following facts are significant. The Debtor and the FmHA refinanced the debt due and owing. At the time of the refinancing no new money was advanced; the interest rates decreased and terms of repayment were extended, all of which benefited the Debtor; no additional collateral was advanced to "secure" the refinancing. The Debtor's argument that because Earland Hansen died there was a change of parties to the contract is without merit. Earland and Marian Hansen signed each of the FmHA notes. The only place the Debtor's name is not included is on the box contained in the upper right hand corner of the top page of the promissory note, which apparently serves as a filing tool. The omission of her name from that box does not affect her status as a co-maker of those loans. Removing Earland Hansen's name from that "box" and inserting the Debtor's name did not result in the substitution of a new party, rather it evidenced the removal of one of two parties to the notes. This also applies to the rescheduling and consolidation of the loans; Earland's name no longer appears on the documents since the rescheduling/consolida-

tion occurred after his death. The Debtor testified regarding the substantial change in her farming operation at the request of FmHA officials which culminated in an obligation to the FmHA to pay half of a $43,000 note. However, that note has not been made a part of the evidentiary record. The note itself is irrelevant to the consideration of whether the notes which were rescheduled and consolidated constituted a novation.

■ The Court concludes based upon the preceding facts—no new money was advanced, no additional security was encumbered, the varying of the term of years and interest rates was done to benefit the Debtor—that no novation was intended. Therefore, since the security agreement predates the 1978 enactment of the Code and all equipment at issue was owned by the debtor prior to 1978, the Debtor's Motion to Avoid Liens pursuant to 11 U.S.C. § 522(f) is denied.

The Debtor's argument regarding the 5th Amendment and private taking and its non-application to a governmental agency under *U.S. v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 is without merit. The specific holding of *U.S. v. Security Industrial Bank* is that the congressional intent was to apply 11 U.S.C. § 522(f) prospectively rather than retrospectively to security interests obtained prior to the Code's November 6, 1979 enactment date. The 5th Amendment taking analysis is dicta and is not controlling in the case at bar.

### ORDERS

IT IS THEREFORE ORDERED that the FmHA does not have purchase money security interest in the John Deere tractor and end-loader and the lien is avoided pursuant to 11 U.S.C. § 522(f) as an exempt asset.

IT IS FURTHER ORDERED that the Debtor's Motion for Lien Avoidance pursuant to 11 U.S.C. § 522(f) regarding the remainder of the equipment as exempt is

denied because the FmHA has a valid pre-enactment 1978 lien.